ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

Menard CC Center

**Offender Information:**

Couch (Last Name) Stephen (First Name) MI ID#: B12125

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 6/16/13 | CMT Note | P: Refer to MDCL |
| 0840 | S: "I was receiving PT for my shoulder | |
| | @ Lawrence CC, and I had a low | |
| | bunk, low gallery, alternate cuff permit." | |
| | O: I/M is requesting permits, as above, | |
| | to be renewed for this facility due to a | |
| | (R) knee & (R) shoulder injury sustained in | |
| | 2009. | |
| | A: Permit requests | [signature] CMT |

Distribution: Offender's Medical Record

Printed on Recycled Paper

EXHIBIT H

DOC 0084 (Eff. 8/2002) (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

MENARD CORRECTIONAL Center

Offender Information:

Couch (Last Name) Stephen (First Name) MI ID#: B12125

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10-18-13 | **Nurse/CMT Tx Protocol: Muscle Strain / Joint Pain** | |
| 915A | S) "I hurt my knee getting out of bed" | P) Refer to MD: ongoing arthritis & recent transfer |
| | What caused the pain (lifting, sports, etc)? Was there and injury? Getting off top bunk | Any suspected fracture, difficulty walking, numbness, severe pain or swelling, deformity And / or fever |
| | How long has pain been present? and slipped hitting knee | Inability to bear weight or use the affected body part |
| | Describe location, type, characteristic & pattern of pain Bruising not to inner knee area mild swelling. Discomfort | No MD Referral: |
| | What precipitates the pain? Alleviates the pain? c palpation | Cold compresses times 12 hrs, then warm moist packs as necessary Elevate affected part |
| | Was swelling immediate or delayed? immediate Weakness or numbness? no | Acetaminophen 325 mg, 1-2 tablets t.i.d. PRN X 3 days, or ~~Ibuprofen 200 mg 1-2 tablets t.i.d. with meals PRN X 3 days~~ |
| | Was a "pop" heard when the body was injured? does not know | Crutches ( if indicated ) for 3 days Lay in ( if indicated) for up to 3 days |
| | O) Offender at top bunk. Got down and walked to door gait steady | Patient Teaching: |
| | T P R BP Wt — refused celldoor | - Medication use - Use of hot/cold packs |
| | Note appearance at rest and at movement? WNL | - Avoid lifting, sports or strenuous activity until area has healed and free of pain approximately 2 weeks |
| | Ecchymosis, redness, bruising? Bruising to both sides but more | Importance of proper body mechanics to avoid injury |
| | Swelling? pronounced inner tissue/knee area | If injury could have been prevented, instruct on future safety measures ( warm up before exercises). |
| | Tenderness on examination? Both sides of knee | - Importance of F/U to MD if symptoms fail to resolve within 5 days or if symptoms worsen |
| | Limited ROM? doesnot appear, but has joint problem | **COMPLETE INJURY REPORT $2.00 Co-pay applied yes or No |
| | A) Muscle strain / Joint Pain — Rhonda Medline | |

Distribution: Offender's Medical Record

Printed on Recycled Paper

EXHIBIT H

DOC 0084 (Eff. 9/2002) (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

MSN Center

Offender Information:

Couch — Last Name | Stephen J — First Name | MI | ID#: B12126

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 6/20/13 | CMT - Note | (P) resched |
| 9:10A | (S) sch MT CL | |
| | (O) not seen | |
| | (A) cancelled due to T&B | [illegible] |
| 6/21/13 | CMT-Note | (P) resched |
| 12:10P | (S) sch MT CL | |
| | (O) Not seen | |
| | (A) cancelled due to | |
| | shake down | [illegible] |

Distribution: Offender's Medical Record

Printed on Recycled Paper

EXHIBIT H

DOC 0084 (Eff. 9/2002) (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

MCC Center

Offender Information:

Couch (Last Name) Stephen (First Name) MI ID#: B12575

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 6/24/13 | MD note | |
| 1125 | S Pt requesting various permits for R shoulder & knee pain. | |
| | O. T 97.4, P80 BP 118/80 wt 157.6 | |
| | A&Ox3, NAD | |
| | limited cooperation with exam. No focal motor deficits or limitation of ROM apparent to me. | |
| | A. R shoulder pain, chronic, not substantiated by physical exam. B symptom magnification | Double cuff permits x 1 year. Does not meet criteria for low bunk or low gallery permits |
| | [signature] | [signature] |

noted [signature] 6/24/13

Distribution: Offender's Medical Record

*Printed on Recycled Paper*

EXHIBIT H

DOC 0084 (Eff. 9/2002) (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**MENARD CORRECTIONAL** Center

**Offender Information:**

Couch (Last Name) Stephen (First Name) ___ (MI) ID#: B12125

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 6/26/13 845A | **Nurse/CMT Tx Protocol: Muscle Strain / Joint Pain** | |
| | S) | P) Refer to MD: wants naproxen renewed |
| | What caused the pain (lifting, sports, etc)? injured it on March 28th Was there and injury? ↗ | Any suspected fracture, difficulty walking, numbness, severe pain or swelling, deformity And / or fever |
| | How long has pain been present? since march | Inability to bear weight or use the affected body part |
| | Describe location, type, characteristic & pattern of pain (R) shoulder joint down to forearm hand constant | No MD Referral: |
| | What precipitates the pain? Alleviates the pain? movement ↑s the pain | Cold compresses times 12 hrs, then warm moist packs as necessary Elevate affected part |
| | Was swelling immediate or delayed? ∅ Weakness or numbness? | Acetaminophen 325 mg. 1-2 tablets t.i.d. PRN X 3 days, or Ibuprofen 200 mg 1-2 tablets t.i.d. with meals PRN X 3 days |
| | Was a "pop" heard when the body was injured? ∅ | Crutches (if indicated ) for 3 days Lay in ( indicated) for up to 3 days |
| | O) states having difficulty c̄ ADLs | Patient Teaching: cont. home exercise programs previous prescribed by previous institutions P.T. |
| | T 97.4 P 76 R 20 BP seen on gallery Wt seen on gallery | Medication use Use of hot/cold packs |
| | Note, appearance at rest and at movement? ∅ deformity noted. | Avoid lifting, sports or strenuous activity until area has healed and free of pain approximately 2 weeks |
| | Ecchymosis, redness, bruising? ∅ | Importance of proper body mechanics to avoid injury |
| | Swelling? ∅ | If injury could have been prevented, instruct on future safety measures ( warm up before exercises). |
| | Tenderness on examination? (+) | - Importance of F/U to MD if symptoms fail to resolve within 5 days or if symptoms worsen |
| | Limited ROM? (+) (R) shldr | **COMPLETE INJURY REPORT $5.00 Co-pay applied yes or No |
| | A) Muscle strain / Joint Pain Alt in comfort | AMacurak [signature] |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002 (Replaces DC 7147)

*Printed on Recycled Paper*

H

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

MENARD CORRECTIONAL Center

Offender Information:

Couch (Last Name) Stephen (First Name) (MI) ID#: B12125

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/20/13 | **Nurse/CMT Tx Protocol: Muscle Strain / Joint Pain** | |
| 0804 | S) I twisted my (R) knee going down the stairs | P) Refer to MD: |
| | What caused the pain (lifting, sports, etc)? fell down stairs | Any suspected fracture, difficulty walking, numbness, severe pain or swelling, deformity And / or fever |
| | Was there and injury? yes | |
| | How long has pain been present? 7/17 | Inability to bear weight or use the affected body part |
| | Describe location, type, characteristic & pattern of pain (R) knee, pain c wt bearing sharp, travels into calf & bottom of foot | No MD Referral: |
| | What precipitates the pain? Alleviates the pain? wt bearing / elevation | Cold compresses times 12 hrs, then warm moist packs as necessary<br>Elevate affected part |
| | Was swelling immediate or delayed? slight<br>Weakness or numbness? | Acetaminophen 325 mg, 1-2 tablets t.i.d. PRN X 3 days, or ibuprofen 200 mg 1-2 tablets t.i.d. with meals PRN X 3 days |
| | Was a "pop" heard when the body was injured? yes | Crutches ( if indicated ) for 3 days<br>Lay in ( if indicated) for up to 3 days |
| | O) Bruise approx 2"x3" noted to inner side of knee (medial) tender to palpation | Patient Teaching: |
| | T 98.2 P 68 R 16 BP 126/74<br>Wt ø wt @ cell | Medication use<br>Use of hot/cold packs |
| | Note appearance at rest and at movement? | Avoid lifting, sports or strenuous activity until area has healed and free of pain approximately 2 weeks |
| | Ecchymosis, redness, bruising? | Importance of proper body mechanics to avoid injury |
| | Swelling? slight | If injury could have been prevented, instruct on future safety measures ( warm up before exercises). |
| | Tenderness on examination? yes | Importance of F/U to MD if symptoms fail to resolve within 5 days or if symptoms worsen |
| | Limited ROM? yes, gait disturbance | **COMPLETE INJURY REPORT<br>$5.00 ~~$2.00~~ Co-pay applied (yes) or No |
| | A) Muscle strain / Joint Pain | [signature] CMT |

Distribution: Offender's Medical Record

*Printed on Recycled Paper*

EXHIBIT
H

DOC 0084 (Eff. 9/2002) (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

Menard Center

Offender Information:

Couch (Last Name) Stephen (First Name) ___ (MI) ID#: B12125

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/25/13 1:00pm | MD NOTES | ✓ |
| Wt 142lb | S: c/o (RT) Knee pain following | X ray (RT) Knee |
| BP 110/60 P 68 | injury to (RT) Knee - Twisted | joint |
| R 20 T 98.8°F | while coming down the steps. | Naprosyn 500mg po ✓ |
| | ≃ 4 yrs ago. | BID with food |
| | O Pain & tenderness (RT) Knee | x 2 months. |
| | joint. No evidence of | F/U 3 months ✓ |
| | joint effusion | [signature] |
| | A: Post Traumatic Osteoarthritis | |
| | of (RT) Knee joint | [signature] 7/25/13 |
| | | |
| | | |
| 7/29/13 | Xray note | |
| 9A | Lt knee done | [signature] RT |
| 7/23/13 | Rn Note | P) HCU PRN |
| 12p | S: Ø O: MDCL for 24 PE done 7/23/13 [illegible] | |
| | t/ MDCL | [signature] |

Distribution: Offender's Medical Record

*Printed on Recycled Paper*

EXHIBIT
H

DOC 0084 (Eff. 9/2002 (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

MENARD CORRECTIONAL Center analgesic balm

Offender Information:

Couch / Hicks error Steven / Keon error ID#: B12125

Last Name / First Name / MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8/5/13 | **Nurse/CMT Tx Protocol: Muscle Strain / Joint Pain** | |
| 0815 | S) Injured my shoulder 1/28/13 @ Lawrence | P) I/M requesting analgesic balm Refer to MD: + pain med rx. |
| | What caused the pain (lifting, sports, etc)? alleged assault<br>Was there and Injury? yes | Any suspected fracture, difficulty walking, numbness, severe pain or swelling, deformity And / or fever |
| | How long has pain been present? 7+ months | Inability to bear weight or use the affected body part |
| | Describe location, type, characteristic & pattern of pain (R) shoulder | No MD Referral: |
| | What precipitates the pain? Alleviates the pain? any movement or position Ballwick, analgesic balm helps | Cold compresses times 12 hrs, then warm moist packs as necessary<br>Elevate affected part |
| | Was swelling immediate or delayed? previous injury<br>Weakness or numbness? yes | Acetaminophen 325 mg, 1-2 tablets t.i.d. PRN X 3 days, or Ibuprofen 200 mg 1-2 tablets t.i.d. with meals PRN X 3 days |
| | Was a "pop" heard when the body was injured? previous | Crutches ( if indicated ) for 3 days<br>Lay in ( if indicated) for up to 3 days |
| | O) | Patient Teaching: |
| | T 98.4 P 68 R 16 BP 128/74<br>Wt ϕ wt seen @ cell | ✓ Medication use<br>✓ Use of hot/cold packs |
| | Note appearance at rest and at movement? NAD @ this time | ✓ Avoid lifting, sports or strenuous activity until area has healed and free of pain approximately 2 weeks |
| | Ecchymosis, redness, bruising? ϕ | Importance of proper body mechanics to avoid injury |
| | Swelling? ϕ | If injury could have been prevented, instruct on future safety measures ( warm up before exercises). |
| | Tenderness on examination? ϕ noted | - Importance of F/U to MD if symptoms fail to resolve within 5 days or if symptoms worsen |
| | Limited ROM? yes | **COMPLETE INJURY REPORT N/A<br>$5.00 ~~$2.00~~ Co-pay applied (yes) or No |
| | A) Muscle strain / Joint Pain | [signature] |

Distribution: Offender's Medical Record

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002 (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

Menard Corr! Center

Offender Information:

Couch (Last Name) Stephen (First Name) ___ (MI) ID#: B12125

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8/9/13 | MD NOTES | |
| 9:20 A/M | S: Presents with (RT) shoulder | Pt was belligerent |
| BP 132/84 P 80 | pain. | and argumentative |
| R 16 | O Xray of (RT) shoulder reveals | and walked off |
| WT 142lb T° 98°F | degenerative changes with bony | as I tried to explain |
| | Spurring at the A-C joint | his condition to him |
| | (RT) shoulder | Claims that the |
| | A Degenerative arthritis of A-C | Nonsteroidal analgesics prescribed for him |
| | joint (RT) shoulder joint | does not walk. |
| | | S. NWAOBASI, MD |
| | | 8/9/13 noted at 9:40AM MOakley CMT/SPN |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Distribution: Offender's Medical Record

*Printed on Recycled Paper*

EXHIBIT H

DOC 0084 (Eff. 9/2002) (Replaces DC 7147)

Rec 8.14

**Illinois Department of Corrections**

**Pat Quinn**
Governor

**S. A. Godinez**
Director

**Menard Correctional Center**
**711 Kaskaskia Street**
**Menard, IL 62259**

**Telephone: (618) 826-5071**
**TDD: (800) 526-0844**

# MEMORANDUM

DATE: August 12, 2013

TO: Stephen Couch
B12125

FROM: Gail Walls, RN
Director of Nurses

SUBJECT: Grievance dated 6/30/12 received 8/2/13

---

I have reviewed your medical record and offer the following:

Concern of wanting transferred to get physical therapy, placed in a level 3 facility with proper medical housing. You have been seen by the doctor and ordered treatment as he felt medically necessary. If he felt you need physical therapy or special placement he would have ordered it.

Gail Walls, RN
Director of Nurses

CC: File

Reference
E 102- Jury

EXHIBIT
I

#8



**Illinois Department of Corrections**

**Pat Quinn**
Governor

**S. A. Godinez**
Director

**Menard Correctional Center**
**711 Kaskaskia Street**
**Menard, IL 62259**

**Telephone: (618) 826-5071**
**TDD: (800) 526-0844**

# MEMORANDUM

DATE: September 11, 2013

TO: Stephen Couch
B12125

FROM: Gail Walls, RN
Director of Nurses

SUBJECT: Grievance dated 6/18/13 received 9/11/13

---

I have reviewed your medical record and offer the following:

Concern of being transferred when under treatment post-surgical for shoulder injury. I couldn't find were you have received surgery for your shoulder issues. You have received injections as well as physical therapy. Those things can be continued at other facilities. Physical therapy at Menard can be done by an outside facility if needed because we do not provide it on-site. You have been evaluated by the facility medical director as well as other doctors here at the facility and ordered treatment as they have felt necessary. Your issue has been addressed.

Gail Walls, RN
Director of Nurses

CC: File

EXHIBIT
I

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

STEPHEN COUCH, #B12125,

Plaintiff,

vs.

SALVADOR GODINEZ, et al.,

Defendants.

No.: 13-1100-NJR-PMF

**DECLARATION**

I, PHIL MARTIN, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1. I am a registered nurse by training, licensed in the State of Illinois. I am currently the Health Care Unit Administrator at Lawrence Correctional Center and have been so employed since August 2009.

2. My duties as a Health Care Unit Administrator include overseeing the daily operations and functioning of the healthcare unit, which provides health care services to inmates at Lawrence Correctional Center.

3. I am not a practitioner, and I do not medically evaluate or treat offenders unless there is an emergency situation.

4. I cannot overrule the medical decisions of doctors within the Health Care Unit.

5. I have no authority to order a particular course of treatment for an offender at any time.

6. I have no authority to refer an inmate to outside specialists.

EXHIBIT
J 1,2,3
PAGE #1

7. For certain medical care, the Lawrence medical director must obtain approval through a collegial review process. If that medical treatment is not approved, the denial is forwarded to the Illinois Department of Corrections medical director.

8. At Lawrence Correctional Center, inmates request medical treatment by submitting a request slip to the health care unit. I do not receive or process the submitted request slips.

9. One of my responsibilities as the Health Care Unit Administrator is to review all the Offender Grievances that come into the Health Care Unit.

10. If a grievance is about a certain employee or issue, then I will refer that grievance to them to be answered.

11. If I can answer the grievance from what I review in the Offender's Medical Record, then I will answer it on what I read from the documentation in the Offender's Medical Record.

12. If I have questions on a grievance, then I will consult with the person that cared for the offender and determine what course of action needs to be followed, depending on the issue.

13. The Medical Director at Lawrence can place a medical hold on inmates in a specific set of circumstances, which include when an inmate has an offsite service scheduled or when an onsite service is scheduled with an offsite provider. Once an offender has attended that particular appointment, the medical hold is lifted.

14. The only involvement I have with medical holds or transfers is when a staff members asks me to look into why a medical hold is in place. If such a case, I will review an inmate's medical records to determine why the hold is in place.

15. I have no knowledge of the medical care Inmate Stephen Couch, #B12125 has received since he was transferred out of Lawrence Correctional Center.

16. However, medical services are available at Menard Correctional Center. I have no basis on which to believe that an offender would receive inadequate medical care at Menard.

17. All IDOC facilities must follow IDOC Administrative Directives concerning medical care.

18. I was not involved in preparing the offender health status transfer summary for Inmate Couch on June 13, 2013. That record was prepared by Nurse Stephanie Reed. I do not directly oversee other medical staff when they prepare a transfer summary.

19. I have read the foregoing paragraphs and they are true and correct to the best of my knowledge and belief.

Pursuant to 28 U. S. C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 6, 2015.

s/Phil Martin

PHIL MARTIN

# AFFIDAVIT

STATE OF ILLINOIS )
) SS:
COUNTY OF LAWRENCE )
)

I, Jeffrey L. Stricklent, duly sworn under oath, depose and say that I am a Grievance Officer at the Lawrence Correctional Center in Sumner, Illinois.

I do hereby affirm the attached are true and correct photo static copies of documents on file at the Lawrence Correctional Center, Sumner, Illinois.

[signature]
Lawrence Correctional Center

Subscribed and sworn to before me this 19 day of March, 2014

OFFICIAL SEAL
SHARON L BURTCH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/21/15

Sharon L. Burtch
Notary Public

My Commission Expires: 9/21/15

EXHIBITS
K.

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

Offender: Couch (Last Name) Stephen (First Name) ___ (MI) B12125 (ID#)

Facility: Menard

☐ Grievance: Facility Grievance # (if applicable) ______ Dated: 6/18/13 6/24/13 or ☐ Correspondence: Dated: ______

Received: 8/1/13 (Date) Regarding: Transfer & Proper Medical Care at Menard

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

- ☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.
- ☒ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, ~~to appeal.~~
- ☐ Provide dates of disciplinary reports and facility where incidents occurred.
- ☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board, Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**

- ☐ Contact your correctional counselor regarding this issue.
- ☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.
- ☐ Contact the Record Office with your request or to provide additional information.
- ☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.
- ☐ Address concerns to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

**No further redress:**

- ☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.
- ☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.
- ☐ This office previously addressed this issue on ______ (Date).
- ☐ No justification provided for additional consideration.

Other (specify): Return w/responses if within timeframe of DR 504.810

Completed by: Leslie McCarty (Print Name) *Leslie McCarty* (Signature) 2.4.14 (Date)

Distribution: Offender, Inmate Issues

*Printed on Recycled Paper*

DOC 0070 (Rev.4/2013)

COUCH 13-1100 000007

ILLINOIS DEPARTMENT OF CORRECTIONS

**RESPONSE TO OFFENDER'S GRIEVANCE**

Grievance Officer's Report

| | | |
|---|---|---|
| **Date Received:** 03/06/13 | **Date of Review:** 06/03/13 | **Grievance #** (optional): 03-13-17 |
| **Offender:** COUCH, STEPHEN | | **ID#:** B12125 |

**Nature of Grievance:** MEDICAL TREATMENT

**Facts Reviewed:**

Inmate Couch B12125 claims in 3 grievances 03-13-17, 03-13-18 & 03-13-19 that he is not receiving what he considers to be adequate medical treatment for his Right knee and shoulder problems. He claims to have had a knee sleeve and Ace wrap taken from him before he transferred here from Western Illinois. He feels he should be transferred somewhere that would meet his medical expectations.

The relief requested is "I want metical treatment and a transfer."

Per interview with D.O.N.Cunningham and HCUA Martin: Inmate Couch is currently receiving Physical therapy for his shoulder injury. He has been placed on the M.D.'s schedule for 06/04/13.

Transfer may be requested through assigned Housing Unit Counselor when eligibility requirements are met.

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends that the grievance be denied.

JEFFREY STRUBHART CC II — Print Grievance Officer's Name

[signature] — Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

**Chief Administrative Officer's Response**

**Date Received:** 6/11/13 ☒ I concur ☐ I do not concur ☐ Remand

**Comments:**

[signature] — Chief Administrative Officer's Signature

6/ /13 — Date

**Offender's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. **(Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)**

Offender's Signature ______ ID# ______ Date __/__/__

Illinois Department of Corrections
**GRIEVANCE RESPONSE**
**LAWRENCE CORRECTIONAL CENTER**

**MEMORANDUM**

DATE: 2-22-13

TO: HCU

FROM: K. Henton CCI T/A
Lawrence Correctional Center

Couch 3/13/13
B12125

SUBJECT: Grievance Response

You have been identified in the attached grievance as having failed to do something or did something that the offender alleges is in violation of Statutory Requirements, Departmental Rules, Administrative Directives, Institutional Directives, or Policies and Procedures.

Per Randy Stevenson, CSS, your grievance response is to be completed and returned to the assigned Counselor within **5 WORKING DAYS**. Any failure to provide a timely grievance response will be reported to your assigned Department Head.

- **Please provide your response in the space provided below.** Please remain mindful that your response needs to be professional as this grievance may be entered into court as an evidentiary document.

N.P. Hardy will re-evaluated offender for a knee sleeve. Offender was ordered one at Western IL C.C. and he should have a permit from Western IL C.C. for this and it should be in his property.

Signature [signature] Date 2-25-13

Please use other side if more space is required

Illinois Department of Corrections

**GRIEVANCE RESPONSE**

**LAWRENCE CORRECTIONAL CENTER**

## MEMORANDUM

**DATE:** 2-22-13

**TO:** HCU

3-13-13

Couch

B12125

**FROM:** K. Henton CCI T/A
Lawrence Correctional Center

**SUBJECT:** Grievance Response

You have been identified in the attached grievance as having failed to do something or did something that the offender alleges is in violation of Statutory Requirements, Departmental Rules, Administrative Directives, Institutional Directives, or Policies and Procedures.

Per Randy Stevenson, CSS, your grievance response is to be completed and returned to the assigned Counselor within **5 WORKING DAYS**. Any failure to provide a timely grievance response will be reported to your assigned Department Head.

- **Please provide your response in the space provided below.** Please remain mindful that your response needs to be professional as this grievance may be entered into court as an evidentiary document.

X-rays were ordered at Western IL C.C. and I have requested these to be sent for review by the M.D./N.P.

Offender will be scheduled to see the N.P. once these are received from Western IL C.C.

Signature [signature] HCUA Date 3-25-13

Please use other side if more space is required

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

Seg AC 8

| Date: 01/11/2013 | Offender: (Please Print) Stephen Couch | ID#: B12125 |
|---|---|---|
| Present Facility: Lawrence Correctional Center | Facility where grievance issue occurred: Lawrenceville Correctional Center | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☐ Other (specify):
- ☐ Disciplinary Report: ____ / / ____ Date of Report ____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:**

**Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer**, only if EMERGENCY grievance.
**Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** That Sence 01-09-2013 my medical Health and mental Health have been down Play By medical staff at Lawrenceville Correctional Center. That my concerns of the same abusive actions are not Prefabricated they are real on many levels,

That by me being forced to look at these People on a daily bases is a Health and safety Concern, That my mental Health Concerns are real when Staff threaten to use orange Crush c/o's to assault my well being by forceing medical help I am refussing. That any Physical contact by staff will be a battery.

**Relief Requested:** I am refussing all Health Care that will save me from being resessitated by them for any reason. Keep you staff off of me please; I am in fear for "my life" at this facility (move me).

☒ Check only if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

[signature] Offender's Signature — B12125 ID# — 01/11/2013 Date

(Continue on reverse side if necessary)

**Counselor's Response** (if applicable)

Date Received: 3/15/13 ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: This grievance is being answered due to a delay in delivery. You have the right to refuse medical treatment. A feeding tube could be ordered by a M.D. which you are not allowed to refuse.

CC I Horton — Print Counselor's Name; CC I [signature] — Counselor's Signature; 3/19/13 — Date of Response

**EMERGENCY REVIEW**

Date Received: 1/16/13 Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance ☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

[signature] Chief Administrative Officer's Signature — 1/16/13 Date

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

That on 01-09-2013 I reported to Registered Nurse K. wood of my Current medical needs for a lower galery lower bunk Permit due to the Knee, back, and Neck injurys I have attained over the years.

I have not been gave this Permit as of 01-11-2013 by medical nursing staff to Protect my medical safety from climbing stairs or injuries from climbing up and down out of the top bunk.

I have declaired a hunger strike on 01-10-2013 at approximately 4:00 Am to Corrections officer AusBROCK, and M. MAUS at appx 10:30 Am and Corr, ofcr C. Wall at appx, 430 Pm / on 01/11/2013 C/o W. Byford 4:00 Am and others working 3:00 To 11 and 7:00/300 Pm I have spoke to several Administrative staff at Lawrence with my Health and Safety Concerns about this Hunger Strike issue And have been physically threatend as to force medical feeding tubs into my nose by medical staff, that I have made clear to them I am refusing and treatment and wish to signe a Do NOT Resuscitate ORDER.

That I have spoke to mental Health Personal Taylor, and told her what is going on with my mental health and Just Signed the paper to talk to her on 01-11-2013 at approx, 1:00, 2:00 Pm

I also spoke with Lt Stuck at 7:30 Am and requested to Speak to warden Marc Hodge Concerning this Conflicting interest on my health and safety issues.

I also spoke to Lt BAYLOR at 11:30 Am on 01-11-2013 Concerning the things that occured in 2010 and was told by him I was Considered a Hero for telling on Eric Nuttall.

I don't want to be a HERO for doing what was right, I will never forget the abuse I went through at this facility by many Correctional Employees.

That my mental Health will always be scared by these events that took Place at this facility.

And no amount of money Can fix that.

That Correctional Officer R GREER badge 7773 Told me he was suprised to see me back here after all the shit I went through at approx 10:00 Am on 01-11-2013.

C/o AusBROOK was working the 11:00 To 7:00 Shift on 04/05/2010 when I Could'nt standup after the beating I took, This c/o help me off the floor in Cell C-11-Seg unit. I could'nt move an RN Blevens gave me Pain Medication That RN Kiszer Refuse me at approx 6:00 Pm on 04/05/2010. I still have issues with this on a daily basis's. Respectfully Submitted

ILLINOIS DEPARTMENT OF CORRECTIONS

**RESPONSE TO OFFENDER'S GRIEVANCE**

| | Grievance Officer's Report | |
|---|---|---|
| **Date Received:** 04/04/13 | **Date of Review:** 08/09/13 | **Grievance # (optional):** 04-13-16 |
| **Offender:** COUCH, STEPHEN | | **ID#:** B12125 |
| **Nature of Grievance:** STAFF CONDUCT/MEDICAL TREATMENT | | |

**Facts Reviewed:**

Inmate Couch B12125 claims that his Medical and Mental health concerns are being down played by Medical Staff at Lawrence Correctional Center. He claims to have been assaulted at Lawrence in 2010 and that he should never have come back here. He has declared a hunger strike as a result of no one taking his concerns seriously. He claims not to want any Medical assistance (basically a DNR) although he has not completed any paperwork. He claims to have been threatened that he will be force fed if he continues with the hunger strike. He does not want to be fed.

Relief requested: "I am refussing all Health Care that will save me from being resessitated by them for any reason. Keep you staff off of me please; I am in fear for "my life" at this facility (move me)."

Inmate Couch may decline any Medical Treatment offered to him. Inmate Couch may fill out forms for Do Not Resuscitate. Inmate Couch may refuse to be force fed while on a hunger strike.

Per phone interview with HCUA Martin: Inmate's may refuse any Medical Treatments they wish to. However; if an Inmate is on a Hunger Strike and the attending Physician, along with Wexford Medical Director, decide that it is "Medically Necessary" and an order has been written, an Inmate may then be force fed regardless of his wishes.

Inmate Couch currently resides at Menard CC.

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends that the grievance be denied.

JEFFREY STRUBHART CC II
Print Grievance Officer's Name

[signature]
Grievance Officer's Signature

**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

**Chief Administrative Officer's Response**

**Date Received:** 8/21/13 ☒ I concur ☐ I do not concur ☐ Remand

**Comments:**

[signature]
Chief Administrative Officer's Signature

8/21/13
Date

**Offender's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. **(Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)**

Offender's Signature ID# Date / /

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

R4 AL13

| Date: 05/08/2013 | Offender: (Please Print) Stephen Couch | ID#: B12125 |
|---|---|---|
| Present Facility: Lawrence Correctional Center | Facility where grievance issue occurred: Lawrence Correctional Center | |

**NATURE OF GRIEVANCE:** 05-13-299.

- ☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ ADA Disability Accommodation
- ☒ Staff Conduct ☐ Dietary ☒ Medical Treatment ☐ HIPAA
- ☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify): ______
- ☐ Disciplinary Report: __/__/__ (Date of Report) ______ (Facility where issued)

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer**, only if EMERGENCY grievance.
**Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

on APRIL 10th 2013 at 10:30 Am I was taken to mount vernons medical Center for an ultra sound approved by the medical regional Director, Rodrick MattICKS and medical hearing Committee for wexford Health Source's Incompany, vendors for Illinois Department of Corrections and Medical Administrator Doctor Louis Shicker hired to over see the treatment for offenders in the Illinois Deptment of Corrections and it,s subcontractors response time for injuries, ultra sounds, medical treatment for offenders of I.D.O.C. to minimize Pain and suffering Doctor Butilide was the ording doctor for Pain medications

**Relief Requested:** I wont to see the Doctor Butilid, and I want this Pain stopped,

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

[signature] B12125 05,08,2013
Offender's Signature / ID# / Date

(Continue on reverse side if necessary)

**Counselor's Response** (if applicable)

Date Received: 5/10/13 ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Per Dr Coe, He was seen by a M.D. and pain meds provided. I (Dr. Coe) will see to re-enforce the P.T. prescription and its importance.

E. SHELTON CCII [signature] CCII 5/15/13
Print Counselor's Name / Counselor's Signature / Date of Response

**EMERGENCY REVIEW**

Date Received: __/__/__ Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

______ Chief Administrative Officer's Signature ______ Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

and other medical treatment for the reported injuries to my right shelder Joint diagnostic medical Procedures Pursuant to 730 ILCS 5/3-6-2 Institutions and facility Administration (e) (1) states as follows: If such Physician or Physicians advise (1) That immediate medical or surgical treatment is required relative to a condition threatening to cause impairment to bodily fuctions or disfigurement (2) The chief Administrative officer may give consent to such treatment such as medical surgical treatment and such consent shall be deemed to be the consent of the Person for all Purposes, including, but not limited to, the authority of a physician to give such treatment, That 20 Illinois Administrative Code Chapter #I Subchapter (d) Part 415 Health Care; Section 415.10 Applicability; Section 415.15 Responsibilities; Section 415.20 Definitions; Section 415.30 medical and Dental Examinations and treatment.

Medical Director Doctor Louis Shicker for the Illinois Department of Corrections was advise by Lawrence Correctional Centers current Physician Doctor Butilid of offender Stephen Couch need for Radiological services after his examination on march 14th 2013 Through 04/10/2013.

Medical Director for the Southern District; Rodrick Matticks was incharge of this transaction and medical deficiencies and shall be responsible for monitoring the Performance of the medical Personnel rendering direct Patient Care.

That between APRIL 10th 2013 Through to the Present date this offender has been scheduled to see medical Personal on 04/21/2013 I was told by Registerd Nurse L. Dowdy that I was schuled to see the doctor and told to signiture a medical refusal form, That I would be seen the next day.

on 04/22/2013 I was seen by Nurse Practitioner L. Philippe at Approximately 11:00 Am I was Issued Pain medications, Neproxen 500 MG TAB from 04/23/2013 Through 05/07/2013 30 Pills.

from the date of 05/07/2013 The medications Pain dosage would be cute back to 250 MG twice daily untill 11/03/2013 with Analgesic balm Muscular Pain Reliever to rub on daily.

I explained my stomach was being upset by all the Pills for Pain Acid indigestion, Heart Burn Sour Stomach, Gas. I was gave a prescription of Ranitdine Generic for Zantac 150mg began on 04/23/2013 Through 05/23/2013 60 TAB Twice aday

I was gave Mintox Plus tablets chewable 100 TAB.

I ask why I have'nt seen the Doctor Butilide Concerning my ultra sound results, I was told she didnt know why.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

I was told by NURSE PRACTITIONER L. Philippe that she would Put me in to see the Doctor.
on 04/27/2013 I signitured a call pass being handed out by offender David moore in R#4-A-L-#9 cell (Porter)
on 04/28/2013 my Call Pass to see the Doctor was canceled and rescheduled, got Call Pass for 6:00 Pm on 04/29/2013 got canceled again. Got a call pass on 05/02/2013 at 10:00 Am Registerd Nurse could not find my medical Records; I was sent back to my housing unit; And told I would be rescheduled again.
on 05/03/2013 at 8:00 Am I was seen for sick call for my Pain I am having Constantly and explained the medication for Pain is not working, my stomach is now becoming a worse problem because of the medications I am taking and Causing constipation and bleeding.
I still have not seen the Doctor sence 03/30/2013 at which time I was gave a shot by Doctor Williams to deaden The pain Cortizone and lidocaine; novicain and corticosteroids something else was used.
I have been told nothing concerning the Ultra Sound that was taken on 04/10/2013 between 12:30 and 1:30 Pm by Registerd Nurse Britny. I was not informed of any Procedure that commonly includes soft tissue mass.
I have not been informed of the indications Evaluted for the Presence of mass, or determination if a mass is solid or cystic, I seen the mass in my sholder during the testing and was told the Doctor would have to explain this to me.
I was rushed out of the hospital after my ultra sound was done, The radiologist was to report these findings within 36 hours, A Preliminary verbal report generally can be given to the referring Physician on request.
Additional Information; This examination is useful in determining the size of Peripheral masses. The examination will determine if the mass is solid, cystic or complex.
I have not been told anything and I am still having limited movement and Pain every time I move my arm to Place my hand on my hip I am in sever Pain and have been having loss of movement like no control over my hand or arm; Pins and needle, lack of feeling in my sholder area flesh outer most Part, The Pain goes under my arm into the top of my Long head Triceps muscle, Through the medial head triceps into my olecranon muscle down into flexor carpi ulnaris and Palmaris longus muscle, "Thum"
Respectfully submited.

ILLINOIS DEPARTMENT OF CORRECTIONS

**RESPONSE TO OFFENDER'S GRIEVANCE**

| | Grievance Officer's Report | |
|---|---|---|
| **Date Received:** 05/29/13 | **Date of Review:** 10/28/13 | **Grievance #** (optional): 05-13-299 |
| **Offender:** COUCH, STEPHEN | | **ID#:** B12125 |

**Nature of Grievance:** MEDICAL TREATMENT

**Facts Reviewed:**
Inmate Couch B12125 claims on April 10th 2013 he was taken to Mount Vernon to a Medical Center for an Ultrasound of his right shoulder. He claims the Ultrasound was completed and he was told at that time he would be informed of the results. He claims as of the date of this grievance, he was never informed of the results of the Ultrasound. He claims to still be suffering from this complaint about his Right shoulder and would like some type of answer. He further claims that he had been prescribed Pain Medications by Dr. Butalide at the time of the referral for the Ultrasound.

The relief requested is "I want to see the Doctor Butalid, and I want this Pain stopped,"

Per response from Dr. Coe: He was seen by an M.D. and pain meds provided. I (Dr. Coe) will see to reinforce the PT prescription and its importance.

This Grievance Officer is able to determine that Inmate Couch was receiving Physical therapy for his shoulder injury prior to his transfer to Menard C.C. This Grievance Officer is unable to determine if Inmate Couch has received his Ultrasound results or follow-up treatment plans for his Right Shoulder complaints.

Inmate Couch B1125 is currently assigned to Menard C.C.

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends that the grievance be denied.

JEFFREY STRUBHART CC II — [signature]

Print Grievance Officer's Name — Grievance Officer's Signature

**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

**Chief Administrative Officer's Response**

**Date Received:** 11/4/13 ☒ I concur ☐ I do not concur ☐ Remand

**Comments:**

[signature] — 11/6/13

Chief Administrative Officer's Signature — Date

**Offender's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. **(Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)**

Offender's Signature — ID# — Date / /

Illinois Department of Corrections
**GRIEVANCE RESPONSE**
LAWRENCE CORRECTIONAL CENTER

**MEMORANDUM**

**DATE:** 5/10/13

**TO:** HCU

**FROM:** Ernest Shelton CCII
Lawrence Correctional Center

**SUBJECT:** Grievance Response Coucut B12125

You have been identified in the attached grievance as having failed to do something or did something that the offender alleges is in violation of Statutory Requirements, Departmental Rules, Administrative Directives, Institutional Directives, or Policies and Procedures.

Per Randy Stevenson, CSS, your grievance response is to be completed and returned to the assigned Counselor within **5 WORKING DAYS**. Any failure to provide a timely grievance response will be reported to your assigned Department Head.

- **Please provide your response in the space provided below.** Please remain mindful that your response needs to be professional as this grievance may be entered into court as an evidentiary document.

He was seen by an M.D. and pain meds provided. I (Dr. Coe) will see to reinforce the PT prescription and its importance

John Coe MD 5-13-13

Signature Date

Please use other side if more space is required

Printed on Recycled Paper

RECEIVED
MAY 10 2013
BY: [signature]

IL 426-0728 (Eff. 7/2006)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** 4AL13

Date: 05/29/2013 | Offender: (Please Print) Stephen Couch | ID#: B 12125

Present Facility: Lawrence Correctional Center | Facility where grievance issue occurred: Lawrence Correctional Center

NATURE OF GRIEVANCE: 06-13-18

- ☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ ADA Disability Accommodation
- ☒ Staff Conduct ☐ Dietary ☐ Medical Treatment ☐ HIPAA
- ☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify):
- ☐ Disciplinary Report: __/__/__ Date of Report ___ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

That sense being house at Lawrence Correctional Center I have filed multiple offender Grievance forms with clinical Service(s) Department Employee's that are not being returned to me in a time from that is combative with the rule(s) and Policy statement and Procedure(s) out lined for offenders Pursuant to Administrative Procedure Directive 20/504 section(s) 504.800 Applicability et all sequence; clinical service Dept, employee(s) at Lawrence Correctional Center fail to return my offender Grievance form back to me within a 60 sixty day time

Relief Requested: I want this abusive neglect and reckless conduct investigated. offenders Grievance's should be returned within 60 days from the filing date with Grievance Administration.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Steve Couch [signature] — Offender's Signature | B12125 — ID# | 05/29/2013 — Date

(Continue on reverse side if necessary)

**Counselor's Response** (if applicable)

Date Received: 5/30/13 ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: This counselor processes all grievances in the order in which they are received. All Administrative and institutional Directives are followed by this counselor.

CCI Buttram — Print Counselor's Name | [signature] — Counselor's Signature | 5/30/13 — Date of Response

**EMERGENCY REVIEW**

Date Received: __/__/__ Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

___ Chief Administrative Officer's Signature | __/__/__ Date

Distribution: Master File; Offender

DOC 0046 (8/2012)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

from. Correctional Officer C.S.C. Jeffroy Strubhart, and Correctional Officer B. Livingston *badge No. 4086 when I have deposited in the door to be Picked up by the Correctional officer(s) incharge of handaling offenders mail while in segregational confinement, Grievance(s) vanish into thin air because offender(s) are not allowed to Place their offender Grievance in a sealed envelope to their clinical Service(s) Counselor to Keep Correctional officers from reading and destroying offender(s) Grievance's.

This Policy violate(s) offender Grievance Procedure(s) of Confidence/Confidentiality during the Performance of duty of Administrative Process at the Lawrence Correctional Center.

Administrative Correctional security Employee(s) work together to Protect each other even if it means violating an offender(s) statutory right, Administrative Right(s) UNITED STATES CONSTITUTIONAL RIGHTS. C/o B. Livingston; D. Shelby; R. Fitch; M. Dean.

These Illinois Department of correctional security Employee(s) all work as a unit under the American Federation of State, County and Municipal Employees through veriest union local(s) Through out the State of Illinois.

These Same correctional officer's are Pissed at Govenor PAT Quinn for not honoring Contracted Pay raises for about 30.000 Union employee(s) through the labor union, and business agent(s) have Put most of these union worker(s) for the American Federation of state, county and municipal on the move to creat dangerous situations throughout the Illinois Department of Corrections that involves a series of action(s) directed at offenders like myself.

Dan Dunlap, President of the American Federation of State County and Municipal, Sead he was disappointed in the Govenor Pat Quinn(s) leadership for attacking his labor employee's and made several calls to verious local union Hall Business Agents to send his mob of Protester(s) to Crampack the Springfield Capitol Building.

Guy(s) like this are the reason the state of Illinois is broke; by using this type of Power to sway Lawmakers.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

Dan Dunlap President of Employee(s) Local #1133 is one of many union Cry babies, using his influence against his employee(s) to creat mob action(s) of organized labor to sway vote(s) hired by him and the rest of his corrupt Business Agent(s) tactic being used against the offender like myself under the care of the Illinois Department of Corruption.

Sense Budget Appropriations have been Controled from 2009 when Govenor PAT QUINN TOOK office 1,963.3 Billion for 2009 Through 2010 a saving(s) of 1.88.1 million has been cut from Illinois of Department of Corruption(s) budget. 2010 1.275.2 The I.D.O.C. Employee(s) 11,000 workers through the A.F.S.C.M. Employee(s) local(s) 28 Prison(s) and other Dept. got rid of 2.383 Worthless Employee's 13.383 sence 2005; Multiple Change(s) have been made to cut back on I.D.O.C. employee(s) from 2007 Through 2013. Most of these correctional employee(s) I have seen sense 10/04/2005 was simply standing around doing nothing but talking getting Paid by the state for nothing.

But now the one(s) that are left are almost as useless and have to do something durring their eight hour shift, most of these I.D.O.C. employee(s) on call at the labor Hall(s) Throughout the state are not reporting in for work being offerd by their local union representitives / Business Agent(s) because thay are being told to decline work as it is not mandatory when thay are called out, Thay are simply told not to Pick up the Phone / Don't be at home.

Give your UNION BROTHERS all the over time the state can handle it, Thay will have to increase operating Appropriations in the Illinois Budget for the Illinois Department of Corruption.

If you got vacation time take it, all of you should take it at the same time to creat inmate frustration(s) when their is not enough Personal to run the Correctional center thay will start filing Law suit(s) against the state, by keeping me locked up 24 hours aday Provoke offender(s) into violence to get more staff hired by the state to Protect us from dangerous offender(s).

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

Disrupting offender(s) Grievance Procedure(s) is a violation of Illinois statutory Provisions 730 ILCS 5/3-8-8 et Seq

And violate(s) My statutory rights Pursuant to 730 ILCS 5/3-2-2 (h) (j) (m).
offender(s) like myself are being restricted by the Condition(s) of the Illinois Department of Corrections Clinical Service(s) Department employee(s) all the way through to the chief Administration(s) Grievance Department throughout the 28 Correctional Center's of Illinois.

When You look at Grievance(S) being filed by many different offender(s) like myself concerning Illinois Department of Correction(s) Employee(s) that are directly responsible for the same Condition(s) or action(s) against which the grievance is being made, showing the same defishent Practice(s) in each and every Correctional Center being ran by the Illinois Department of Correction(s) Grievance Procedure(s) Administration Department Personal, This warrant's inquire from an outside source other than,
The Administrative Review Board of Inmate Issue(s) of the Illinois Department of Corruption(s),
Current Director SALVADOR ALTORO GODINEZ and his Fourty Marxist revolutionary commanchiro(s) state owned means of Production of the offender(s) Grievance Political doctrine based on IDOC official ideologies.

The only intergovernmental Cooperation with the offender(s) Grievance Procedure's is the Paper you get that has the offender Grievance Printed on it.

I have wrote so many offender Grievence(s) it is not funny, and never WON any of them;
NORE have I ever seen a member of the Illinois Department of Corruptions Administrative Review Board of Inmate Issues.

I am Lucky to even get my Grievance(s) back from I.D.O.C Administrative Personal here at Lawrence Corruption(s) Center, Clinical Surveillance Department.

I see how Postal worker(s) Gun down worthless co-worker(s) Sad but true; I forgot to mention that was a union ex co worker. I sure hate this type of violence from such good folk(s).

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| | Grievance Officer's Report | |
|---|---|---|
| **Date Received:** 06/12/13 | **Date of Review:** 11/07/13 | **Grievance #** (optional): 06-13-18 |
| **Offender:** COUCH, STEPHEN | | **ID#:** B12125 |

**Nature of Grievance:** GRIEVANCE PROCEDURE

**Facts Reviewed:**
Inmate Couch B12125 claims he is not receiving his grievances back within the required timeframe.

The relief requested is "I want this abusive neglect and reckless conduct investigated. offenders Grievance's should be returned within 60 days from the filing date with Grievance Administration."

This Grievance Officer finds that Inmate Couch's grievance is inaccurate in that there is not a specified timeframe for the Counselor or Grievance Officer to provide their written response.

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends that the grievance be denied.

JEFFREY STRUBHART CC II
Print Grievance Officer's Name

[signature]
Grievance Officer's Signature

**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

**Chief Administrative Officer's Response**

**Date Received:** 11/17/13 ☒ I concur ☐ I do not concur ☐ Remand

**Comments:**

[signature]
Chief Administrative Officer's Signature

11/17/13
Date

**Offender's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. **(Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)**

Offender's Signature ID# / / Date

Illinois Department of Corrections
GRIEVANCE RESPONSE
LAWRENCE CORRECTIONAL CENTER

**MEMORANDUM**

DATE: 2-22-13

TO: HCU

2-13-18

FROM: K. Henton CCI T/A
Lawrence Correctional Center

Couch
B12125

SUBJECT: Grievance Response

You have been identified in the attached grievance as having failed to do something or did something that the offender alleges is in violation of Statutory Requirements, Departmental Rules, Administrative Directives, Institutional Directives, or Policies and Procedures.

Per Randy Stevenson, CSS, your grievance response is to be completed and returned to the assigned Counselor within **5 WORKING DAYS**. Any failure to provide a timely grievance response will be reported to your assigned Department Head.

- **Please provide your response in the space provided below.** Please remain mindful that your response needs to be professional as this grievance may be entered into court as an evidentiary document.

RN Woods did the Intake Screening on 1-9-13 at 5:30 pm. Vital signs documented and noted current complaint of "knee pain."

Offender was assessed on 1-22-13 by NP Hardy and was scheduled for left knee X-Ray but went on court writ and transferred to Illinois River C.C.

Offender will be rescheduled for left knee ~~ex~~ X-Ray, then followed-up by NP.

Signature [illegible] Date 2-25-13

Please use other side if more space is required

Printed on Recycled Paper

Couch B12125 all Grievances and Emergency Grievances from 01/01/13 to 03/18/14

| Grievance # | | Inmate # | Inmate Name | Issue | Date Received | Date Sent to Warden | Date Returned by Warden | Disposition | Date Sent to Inmate |
|---|---|---|---|---|---|---|---|---|---|
| E | 72 | B12125 | COUCH | 2A | 01/14/13 | 01/24/13 | 01/16/13 | N | 02/04/13 |
| E | 288 | B12125 | COUCH | 11A | 03/11/13 | 03/15/13 | 03/19/13 | N | 04/01/13 |
| E | 385 | B12125 | COUCH | 11A | 03/19/13 | 03/25/13 | 04/04/13 | N | 04/09/13 |
| E | 456 | B12125 | COUCH | 11A | 04/25/13 | 04/25/13 | 04/29/13 | N | 05/21/13 |
| E | 475 | B12125 | COUCH | 11E | 04/23/13 | 04/23/13 | 04/23/13 | N | 05/21/13 |
| E | 690 | B12125 | COUCH | 11E | 06/17/13 | 06/21/13 | 06/24/13 | N | 07/01/13 |

Couch B12125 all Grievances and Emergency Grievances from 01/01/13 to 03/18/14

| Grievance Number | Inmate's # | Inmate's Name | Issue | Date Received | | Date Sent To Warden | Disposition | Date Sent to Inmate |
|---|---|---|---|---|---|---|---|---|
| 02-13- 125 | B12125 | COUCH | 8B | 02/22/13 | EB | 05/10/13 | DENIED | 06/06/13 |
| 02-13- 187 | B12125 | COUCH | 11E | 02/28/13 | JM | 05/29/13 | DENIED | 06/17/13 |
| 03-13- 16 | B12125 | COUCH | 11F | 03/06/13 | JS | 06/04/13 | MOOT | 06/10/13 |
| 03-13- 17 | B12125 | COUCH | 11E | 03/06/13 | JS | 06/04/13 | DENIED | 06/10/13 |
| 03-13- 18 | B12125 | COUCH | 11E | 03/06/13 | JS | N/A | Combined w/ 03-13-17 | N/A |
| 03-13- 19 | B12125 | COUCH | 11E | 03/06/13 | JS | N/A | Combined w/ 03-13-17 | N/A |
| 03-13- 20 | B12125 | COUCH | 15C | 03/06/13 | JS | 06/04/13 | DENIED | 06/10/13 |
| 04-13- 16 | B12125 | COUCH | 11F | 04/04/13 | JS | 08/21/13 | DENIED | 09/04/13 |
| 04-13- 17 | B12125 | COUCH | 11F | 04/04/13 | JS | 08/21/13 | DENIED | 09/04/13 |
| 04-13- 18 | B12125 | COUCH | 14B | 04/04/13 | JS | 08/21/13 | DENIED | 09/04/13 |
| 04-13- 61 | B12125 | COUCH | 2D | 04/11/13 | JS | 09/09/13 | DENIED | 09/17/13 |
| 05-13- 111 | B12125 | COUCH | 19A | 05/08/13 | JS | 10/07/13 | DENIED | 10/11/13 |
| 05-13- 112 | B12125 | COUCH | 7D | 05/08/13 | JS | 10/07/13 | DENIED | 10/11/13 |
| 05-13- 113 | B12125 | COUCH | 7B | 05/08/13 | JS | 10/07/13 | DENIED | 10/11/13 |
| 05-13- 114 | B12125 | COUCH | 7B | 05/08/13 | SR | 10/07/13 | DENIED | 10/11/13 |
| 05-13- 115 | B12125 | COUCH | 7D | 05/08/13 | KM | 10/07/13 | DENIED | 10/11/13 |
| 05-13- 116 | B12125 | COUCH | 7B | 05/08/13 | ES | 10/07/13 | DENIED | 10/11/13 |
| 05-13- 247 | B12125 | COUCH | 11E | 05/22/13 | ES | 11/01/13 | DENIED | 11/6/2013 |
| 05-13- 248 | B12125 | COUCH | 3C | 05/22/13 | ES | 11/01/13 | DENIED | 11/6/2013 |
| 05-13- 249 | B12125 | COUCH | 7B | 05/22/13 | JS | N/A | Mailed back-prev addressed | 10/15/13 |
| 05-13- 250 | B12125 | COUCH | 19D | 05/22/13 | ES | 11/01/13 | DENIED | 11/6/2013 |
| 05-13- 299 | B12125 | COUCH | 11E | 05/29/13 | JS | 11/04/13 | DENIED | 11/6/2013 |
| 05-13- 300 | B12125 | COUCH | 8D | 05/29/13 | JS | 11/04/13 | DENIED | 11/6/2013 |
| 05-13- 301 | B12125 | COUCH | 8D | 05/29/13 | JS | 11/04/13 | DENIED | 11/6/2013 |
| 06-13- 17 | B12125 | COUCH | 11E | 06/12/13 | JS | N/A | Mailed back-prev addressed | 11/20/13 |
| 06-13- 18 | B12125 | COUCH | 7B | 06/12/13 | JS | 11/14/13 | DENIED | 11/20/13 |
| 06-13- 19 | B12125 | COUCH | 11E | 06/12/13 | JS | 11/14/13 | DENIED | 11/20/13 |
| 06-13- 20 | B12125 | COUCH | 11F | 06/12/13 | JS | 11/14/13 | DENIED | 11/20/13 |
| 06-13- 21 | B12125 | COUCH | 11E | 06/12/13 | JS | N/A | Mailed back-prev addressed | 11/20/13 |
| 06-13- 22 | B12125 | COUCH | 11E | 06/12/13 | JS | N/A | Mailed back-prev addressed | 11/20/13 |
| | | | | | | | | |
| | | | | | | | | |

B12125 COUCH, STEPHEN IGRV Inmate History

| Igrv Code | Hearing/Rec Date | Igrv Loc | Hearing Loc | Chair Code | Mail Code | Comments Field |
|---|---|---|---|---|---|---|
| OTHER | 09/24/2013 | WIL | MEN | JAMI | G | GRV #12-0896; STATES WAS DENIED HIS PERSONAL HYGIENE ITEMS. MOOT ISSUE |
| STAFF CONDUCT | 09/19/2013 | WIL | WIL | SCKE | G | GRV #12-0895; C/O SCOGGAN, 8/4/12. PP (CONFISCATED PERSONAL PAPER AND DI |
| ADMIN POLICY | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0858; NO MOVEMENT DUE TO LOCKDOWN 8/18/12 & FEELS THIS VIOLATES |
| ADMIN POLICY | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0763; NAMEPLATES NOT WORN BY DIETARY STAFF. GRV# 12-1003 REC'D H |
| MEDICAL | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0813; CLAIMS EYEGLASSES STILL MISSING FROM SEG RELEASE OF 5/7/12 |
| MEDICAL | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0857; MEDICAL CALL PASSES STOPPED DUE TO LOCKDOWN 8/18/12 & 8/1 |
| MEDICAL | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0856; INCIDENT W/ NURSE BRADBURY & ICE BAG 7/12/12. ALSO CITES GEN |
| MEDICAL | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0710; GRIEVES ICE FOR INJURY IS NOT GIVEN 4X DAILY. INCIDENT W/ NUF |
| OTHER | 09/05/2013 | WIL | MEN | SHBE | G | RGF; GRV# 12-0859; HOW STAFF INTERACTED W/ OTHER I/M'S WHILE SECURING TI |
| OTHER | 09/05/2013 | WIL | WIL | SHBE | G | RGF; GRV# 12-0740; UNSURE OF ISSUES. CITES A 7/22/12 INCIDENT RE MEDICAL CA |
| OTHER | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0707; GRIEVES SIZE OF INDIGENT/DITTY BAG REC'D 6/20/12. NO MERIT |
| SECURITY | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-1017E; CLAIMS THREATS FROM I/M FIGUEROA (R42972). OTS SHOWS IN S/ |
| STAFF CONDUCT | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0860; C/O LAWSON & ALLEGED VERBAL HARASSMENT BY HIM TOWARDS I |
| STAFF CONDUCT | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0742; CLAIMS LUNCH DENIED BY C/O'S BARFIELD & GRAHAM ON 7/25/12; A |
| STAFF CONDUCT | 09/05/2013 | WIL | MEN | SHBE | G | GRV# 12-0709; CLAIMS C/O BARFIELD REPEATEDLY CALLED HIM A BITCH ON 7/11/12 |
| LIBRARY | 09/04/2013 | WIL | MEN | SHBE | G | RGF; GRV# 12-0861; ATTITUDE OF LIBRARIAN MS. OLSON & ACCESS TO LIBRARY. G |
| MEDICAL | 09/04/2013 | WIL | MEN | SHBE | G | GRV# 12-0764; BLAMES C/O JOHNSON FOR MISSING 9:30 MED CALL PASS ON 6/25/1 |
| MEDICAL | 09/04/2013 | WIL | MEN | SHBE | G | GRV# 12-0706; CLAIMS C/O MOUNTAIN TOLD HIM HE WOULD SUBMIT I/M ON SICK C |
| MEDICAL | 09/04/2013 | WIL | MEN | SHBE | G | GRV# 12-0711; ACTIONS OF SGT KNISLEY 6/23/12 BY DENYING I/M ICE & ALLEGEDLY |
| PP | 09/04/2013 | WIL | MEN | SHBE | G | RGF/DUP; GRV# 12-0762; PP MISSING UP SEG RELEASE 5/7/12. ARB ANSWERED THI |
| SCHOOL | 09/04/2013 | WIL | MEN | SHBE | G | RGF; GRV# 12-0761; GED & HAS TRIED FOR PAST 5 YRS TO OBTAIN IT. GRV IS DATE |
| STAFF CONDUCT | 09/04/2013 | WIL | MEN | SHBE | G | GRV# 12-0708; CLAIMS C/O VOLK VERBALLY HARASSED HIM ON 6/20/12. DENIED. |
| ✓ MEDICAL | 08/12/2013 | LAW | LAW | SCKE | G | RGF- GRV. # 2-13-87; GRIEVES DURING HUNGER STRIKE CO WOULD NOT GET A W. |
| ✓ MEDICAL | 07/18/2013 | LAW | LAW | SCKE | G | RGF-PTF; GRIEVES MED SCREENING AND HEALTH ASSESSMENT WHEN COMING T |
| OTHER | 06/07/2013 | WIL | LAW | JAMI | G | GRV #12-0416; STATES RECEIVED OLD REQUEST FORMS (DC 7177) INSTEAD OF NE |
| STAFF CONDUCT | 05/31/2013 | WIL | LAW | JAMI | G | GRIEVES C/O FINCH 4/9/12. DENIED. |
| ✓ STAFF CONDUCT | 05/06/2013 | LAW | LAW | JAMI | G | ALLEGES MED STAFF INJURED SHOULDER CAUSING PAIN; REQUST CT SCAN OR M |
| STAFF CONDUCT | 05/03/2013 | WIL | LAW | JAMI | G | GRV #12-0453E; ALLEGES C/O SHAW MADE HIM GO UPSTAIRS FOR SHOWER, 5/5/1 |
| PP | 04/29/2013 | WIL | LAW | JAMI | G | GRV #12-0558; STATES PP ITEMS MISSING WHEN HE RETURNED FROM SEG. DENIE |
| PP | 04/29/2013 | WIL | LAW | JAMI | G | GRV #12-0561; ALLEGES MATTRESS IS RIPPED; MOOT. NO LONGER IN THAT CELL. |
| STAFF CONDUCT | 04/29/2013 | WIL | LAW | JAMI | G | GRV #12-0454E; STATES HAS LOW GALLERY PERMIT, BUT LT. GOODING FORCED I |

B12125 COUCH, STEPHEN IGRV Inmate History

| Igrv Code | Hearing/Rec Date | Igrv Loc | Hearing Loc | Chair Code | Mail Code | Comments Field |
|---|---|---|---|---|---|---|
| STAFF CONDUCT | 04/29/2013 | WIL | LAW | JAMI | G | GRV #12-0559; MRS. PETERMAN NEGLECTING MENTAL HEALTH NEEDS, 5/2/12. DEI |
| STAFF CONDUCT | 04/29/2013 | WIL | LAW | JAMI | G | GRV #12-0562; GRIEVES LOW BUNK PERMIT. DENIED |
| DR | 04/26/2013 | WIL | LAW | JAMI | G | GRV #12-0417; DR 4/7/12 @ WIL #201200603/1-WIL. DENIED |
| STAFF CONDUCT | 04/26/2013 | WIL | WIL | JAMI | G | GRV #12-0560; C/O BARFIELD, 5/7/12. |
| CONDITIONS | 04/25/2013 | WIL | LAW | JAMI | G | GRV #12-0445; STATES SATELLITE LAW LIBRARY NOT MAINTAINED AND UPDATED, N |
| PP | 04/25/2013 | WIL | LAW | JAMI | G | GRV #12-0447; STATES EYEGLASSES, PHONE BOOK, PHONE LIST, MEDICAL FILES N |
| STAFF CONDUCT | 04/25/2013 | WIL | LAW | JAMI | G | GRV #12-0446; ALLEGES C/O'S FINCH, GIBSON & LT. GOODING TOLD GRVT COULDN |
| GRIEV PROCESS | 03/22/2013 | WIL | LAW | JAMI | G | GRV# 12-0369; COUNSELOR VINCENT & HOW SHE HANDLED "EMERGENCY GRV'S". |
| GRIEV PROCESS | 03/22/2013 | WIL | LAW | JAMI | G | GRV# 12-0368; BELIEVES GRIEVANCES AREN'T BEING RETURNED. DENIED |
| ✓MAILROOM | 03/19/2013 | LAW | LAW | JAMI | G | RGF; LEGAL MAIL OPENED ON 2/22/13. RGF FOR G/O RESPOSNE. |
| SECURITY | 01/17/2013 | WIL | LAW | JAMI | G | STAFF (KORTE-IA SUPERVISOR). DUPLICATE PER WIL. |
| STAFF CONDUCT | 01/15/2013 | WIL | LAW | JAMI | G | GRVV# 12-1093E; STATES DENIED PROTECTION BY LT. KORTE ON 10/10/12. DENIEI |
| STAFF CONDUCT | 01/15/2013 | WIL | LAW | JAMI | G | GRV# 12-1092E; LT. KORTE NOT PUTTING I/M FIGUEROA UNDEER INV. STATUS AND |
| STAFF CONDUCT | 01/15/2013 | WIL | LAW | TEAN | G | GRV# 12-1094E; LT. KORTE THREATENED SEG ON 10/24/12. YOU ASKED TO HAVE A |
| MEDICAL | 11/22/2012 | WIL | WIL | JAMI | G | MEDICAL/PLACEMENT. RGF FOR G/O RESPONSE. RGF FOR G/O RESPONSE. |
| STAFF CONDUCT | 11/05/2012 | PNK | WIL | SHBE | G | GRV# 12-17-11; CLAIMS C/O GLAZIER THREATENED HIM 10/18/11 FOR DISPUTING A ( |
| STAFF CONDUCT | 09/27/2012 | WIL | WIL | TEAN | G | RGF; REPORT TO IA/ISSUE DID NOT HAPPEN TO HIM; STATES A LT. MADE RACIAL RI |
| STAFF CONDUCT | 09/20/2012 | PNK | WIL | SAJO | G | GRIEVES POLICY I/MS CANNOT LEAVE THE LIBRARY TO USE THE RESTROOM. DEN |
| STAFF CONDUCT | 09/20/2012 | PNK | WIL | SAJO | G | RGF, CLINICAL SERV DEPT STAFF DO NOT PICK UP GRIEVANCES DAILY. GRV CITED |
| PP | 09/19/2012 | WIL | WIL | JAMI | G | RGF; GRIEVES CONFISCATED PP DURING 4/7/12 SHAKEDOWN. BEYOND TIMEFRAM |
| STAFF CONDUCT | 09/19/2012 | WIL | WIL | JAMI | G | RGF; STATES STAFF DID NOT TELL HIS CELLMATE HE NEEDED TO MOVE TO TOP BI |
| CLASSIFICATION | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0347; BLUE ID (MOD ERD). PTF CAO SIGNED 7/19/12 |
| CONDITIONS | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0346; HAD TO CLIMB STAIRS TO USE RESTROOM 3/11/12. CAO SIGNE |
| CONDITIONS | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0348; MATTRESS CAME APART UPON CELL MOVE 2/27/12. CAO SIGNI |
| CONDITIONS | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0344; BOOT CHANGE DENIED 3/7/12. CAO SIGNED 7/19/12, PTF |
| CONDITIONS | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0345; I/M'S FEEDING BIRDS 3/1/12. PTF, CAO SIGNED 7/19/12 |
| DR | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0341; IDR 4/7/12 BY C/O KORTE. PTF, CAO SIGNED 7/19/12. ONLY HAV |
| GRIEV PROCESS | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0366; DOC'S REMOVED FROM GRV HE FILED BY COUNSELOR VAN ST |
| LIBRARY | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0343; MS. OLSON DENIED HIM A NOTARY 3/21/12. PTF CAO SIGNED 7 |
| LIBRARY | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0342; MS. OLSON & INTERFERRED W/ HIS RIGHT TO COPY AND RECE |
| MEDICAL | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0367; ISSUES W/ KNEE LOCKING UP & 2/23/12 HCU VISIT. PTF, CAO S |

B12125  COUCH, STEPHEN                    IGRV Inmate History

| Igrv Code | Hearing/Rec Date | Igrv Loc | Hearing Loc | Chair Code | Mail Code | Comments Field |
|---|---|---|---|---|---|---|
| MEDICAL | 09/13/2012 | WIL | WIL | SAJO | G | RGF, GRV# 12-0367; ISSUES W/ KNEE LOCKING UP & 2/23/12 HCU VISIT.  PTF, CAO S |
| PP | 09/13/2012 | WIL | WIL | SAJO | G | RGF, SENT IN (4) GRV OFF REPORTS (12-0275, 12-0277, 12-0274, 12-0276) ON PP, ME |
| STAFF CONDUCT | 09/13/2012 | WIL | WIL | SAJO | G | RGF, CLAIMS STAFF REMOVED PP (LEGAL PAPERS, CALL PASSES, ETC) FROM CELL |
| STAFF CONDUCT | 08/02/2012 | WIL | WIL | GIAL | G | RGF;PTF - 3-21-12 MICHELE OLSON   NO G/O & CAO RESPONSE AS REQUIRED. |
| DR | 06/27/2012 | PNK | WIL | SAJO | G | DR 2/3/12, CONTRABAND INDEX OF DRS AND ADS AND AD 05.03.120 AND 05.03.122. |
| OTHER | 06/07/2012 | PNK | PNK | GIAL | G | 11-53-11 - INDEGENT STATUS. SHOWERS IN SEG, CLEANING SUPPLIES IN SEG -BEL |
| SECURITY | 06/07/2012 | PNK | PNK | GIAL | G | 11-81-11 = MAKE PTTS R08474 A KSF DUE TO PITTS STG AND THREATS MADE TO I/M |
| MEDICAL | 06/05/2012 | PNK | PNK | GIAL | G | 11-52-11 = MEDS ARE BEING CRUSHED W/OUT DR AUTHORIZATION.  DENIED.  GA |
| PP | 06/05/2012 | PNK | PNK | GIAL | G | 11-58-11 = MISSING PP DUE TO STAFF ALLOWING PORTERS TO PACK/HAVE ACCESS |
| STAFF CONDUCT | 06/05/2012 | PNK | PNK | GIAL | G | RGF: NO JUST - 11-14-11 = STAFF DO NOT REPORT ASSLTS TO INMATES THAT I/M C |
| MEDICAL | 04/19/2012 | PNK | PNK | JAMI | G | 12-21-11; WANTS MEDS CHANGED AND LOW BUNK/LOW GALLERY PERMIT.  DENIED |
| PP | 04/06/2012 | PNK | WIL | GIAL | G | RGF: PP ISS = PP MISSING AFTER TR ON 2-15-12 PNK TO WIL. |
| PP | 04/06/2012 | WIL | WIL | GIAL | G | RGF: GO/CAO = CONFISCATION FORM ON 2-17-12 FOR FAN FROM WIL CC. |
| STAFF CONDUCT | 04/06/2012 | WIL | WIL | GIAL | G | RGF: GO/CAO - STAFF DO NOT HONOR ANY REQUEST I/M MAKES. |
| DIETARY | 03/28/2012 | PNK | WIL | GIAL | G | ONLY TWO MEALS PER DAY.  ++ NO MERIT ++ DIR APRVD PILOT BRUNCH PROGRAM |
| STAFF CONDUCT | 02/29/2012 | PWC | WIL | GIAL | G | RGF: NO JUST = BUS/TRUST AT PNK CHARGE FOR ID'S AND KIM DEEN HAS HER HU |
| OTHER | 02/03/2012 | PNK | PNK | JAMI | G | RGF: NO JUST = REPORTING ON EVENTS THAT HAPPENED TO ANOTHER OFFENDE |
| PP | 02/02/2012 | PNK | PNK | JAMI | G | RGF:PTF = 8-140-11-  HIS LEGAL BOOKS ARE MISSING SINCE APRIL 2011. |
| STAFF CONDUCT | 12/21/2011 | PNK | PNK | JAMI | G | GRV# 6-71-11- COUNSELOR LAIRD (24 DOCUMENTS REQUEST COPIES; NEVER RET |
| RELIGION | 12/20/2011 | PNK | PNK | JAMI | G | GRV# 8-139-11- C/O'S WOULD NOT LET HIM GO TO CHOW ON 8/16/11 BECAUSE HE I |
| STAFF CONDUCT | 12/20/2011 | PNK | PNK | JAMI | G | GRV# 7-83-11- WANTS A VERIFICATION OF TRUST FUND REQUEST;  NO MERIT, NO A |
| DR | 12/02/2011 | PNK | PNK | JAMI | G | DR 10/3/2011. RGF FOR G/O RESPONSE. |
| DR | 12/02/2011 | PNK | PNK | JAMI | G | DR 10/3/2011. RGF FOR G/O RESPONSE. |
| STAFF CONDUCT | 12/02/2011 | PNK | PNK | JAMI | G | GO DEEN. RGF FOR G/O RESPONSE. |
| STAFF CONDUCT | 12/02/2011 | PNK | PNK | JAMI | G | STATES HE IS BEING THREATENED BY INMATE QUINTON PITTS R08474. RGF FOR G |
| OTHER | 11/16/2011 | PNK | PNK | JAMI | G | GRV# 9-22-11- REQUESTS A COPY OF LEADS CHECK;  DENIED; |
| STAFF CONDUCT | 10/24/2011 | PNK | PNK | JAMI | G | CO HILL, REQUESTS HYGIENE ITEMS. RGF FOR G/O RESPONSE. |
| STAFF CONDUCT | 10/20/2011 | PNK | PNK | JAMI | G | WANTS ACCESS TO LIBRARY TO CHECK OUT BOOKS. RGF FOR G/O RESPONSE. |
| MEDICAL | 09/12/2011 | PNK | PNK | JAMI | G | GRV# 6-70-11 - REQUESTS PAIN MEDS/LOW BUNK FOR MECK & RT. KNEE INJURY;  A |
| CLASSIFICATION | 08/29/2011 | PNK | PNK | JAMI | G | DISAGREES WITH BLUE ID CARD, ESCAPE STATUS. RGF FOR G/O RESPONSE. |
| STAFF CONDUCT | 06/03/2011 | LAW | LAW | JAMI | G | 31112 - INMATE STATES CO STOUT DID NOT MANUALLY UNLOCK HIS CELL DOOR FC |

B12125 COUCH, STEPHEN IGRV Inmate History

| Igrv Code | Hearing/Rec Date | Igrv Loc | Hearing Loc | Chair Code | Mail Code | Comments Field |
|---|---|---|---|---|---|---|
| CLASSIFICATION | 05/31/2011 | LAW | LAW | JAMI | G | 31114 - INMATE WANTS SECURITY REDUCTION. DENIED. |
| PROGRAM/JOBS | 05/31/2011 | LAW | LAW | JAMI | G | 20110120 - INMATE STATES THAT THERE IS NO DRUG PROGRAM AT LAW. I/M WILL N |
| OTHER | 05/27/2011 | PNK | PNK | JAMI | G | NUMEROUS GRIEVANCES INCLUDING MAIL & STAFF. RGF FOR G/O RSPONSE. |
| BUSINESS/TRUS | 05/03/2011 | LAW | LAW | JAMI | G | 31115 (31111 AND 211119 ANSWERED WITH THIS GRV) - DISAGREES WITH COMMISS |
| STAFF CONDUCT | 05/03/2011 | LAW | LAW | JAMI | G | 31111 (ANSWERED WITH 31115) - INMATE STATES COUNSELOR DOWNEN FAILED FC |
| STAFF CONDUCT | 05/03/2011 | LAW | LAW | JAMI | G | 211119 (ANSWERED WITH 31115) - INMATE STATES HE PUT IN A 2ND REQUEST FOR |
| STAFF CONDUCT | 04/28/2011 | LAW | LAW | JAMI | G | 21181 - SGT. DYKE; ALLEGED HARASSMENT. I/M DENIED ANY CONCERNS AT HIS LAS |
| MAILROOM | 04/05/2011 | LAW | LAW | JAMI | G | TO BE NOTIFIED WHEN MAIL HAS BEEN RETURNED. RGF FOR G/O RESPONSE. |
| MAILROOM | 04/05/2011 | LAW | LAW | JAMI | G | ALTERNATIVE OUTGOING MAILBOX IN ALL HOUSING UNITS. RETURNED DUE TO LA |
| STAFF CONDUCT | 04/05/2011 | LAW | LAW | JAMI | G | WANTS CELLIE MOVED. TALK TO IA. RGF FOR G/O RESPONSE IF TIMELY. |
| MAILROOM | 03/01/2011 | MEN | MEN | JAMI | G | MULTIPLE DOCUMENTS, STAFF CONDUCT; NONE COMPLETED WITHIN DR504 GUID |
| PP | 02/07/2011 | LAW | LAW | JAMI | G | PROPERTY AND CO MOLENHOUR. RGF FOR G/O RESPONSE. |
| STAFF CONDUCT | 02/07/2011 | LAW | LAW | JAMI | G | REQUESTS TRANSFER SO HE WILL BE PROTECTED FROM STAFF ABUSE. RGF FOR |
| MEDICAL | 01/25/2011 | LAW | LAW | JAMI | G | 1110060 - DENIED KNEE BRACE ORDER BY DR FENOGLIO 9/23/10; CRUTCHES WERE |
| STAFF CONDUCT | 01/25/2011 | LAW | LAW | JAMI | G | 1010092 - CO NUTTALL WAS ABUSIVE AND DESTROYED PERSONAL PROPERTY & LE |
| CONDITIONS | 10/20/2010 | LAW | LAW | JAMI | G | 0810019 - NO VENTILATION IN CELLS. PER CHIEF ENGINEER FUNK, VENTILATION E |
| LIBRARY | 10/20/2010 | LAW | LAW | JAMI | G | 0810020 - NO ACCESS TO LAW LIBRARY. PER PARALEGAL DUNLAP, I/M HAS NOT PR |
| LIBRARY | 06/18/2010 | MEN | MEN | JAMI | G | 13310 - DIDN'T RECEIVE HIS COPIES AND THIS DELAYED HIS RESEARCH FOR FILIN |
| MEDICAL | 04/19/2010 | MEN | MEN | JAMI | G | 14310 - COUNSELOR IS HINDERING HIS GRIEVANCE PROCESS AND GETTING ANSV |
| STAFF CONDUCT | 07/20/2009 | MEN | MEN | JAMI | G | SENT A NOTE TO OFFICER AND NOW FEARS FOR HIS SAFETY - 97409 |
| LIBRARY | 07/07/2009 | MEN | MEN | JAMI | G | DENIED ACCESS TO LAW LIBRARY DURING LOCKDOWN. (22-5-09) |
| LIBRARY | 02/19/2008 | MEN | MEN | SHBE | G | RGF; LIBRARY ISSUES. HIS GRV IS DATED 2/12/08 AND A GRIEVANCE OFFICER'S RE |
| PP | 02/19/2008 | MEN | MEN | SHBE | G | RGF; PROPERTY DAMAGED AND MAIL HANDLING, NEVER RECEIVED HIS COURT TI |

B12125 COUCH, STEPHEN IGRV Inmate History

| Igrv Code | Hearing/Rec Date | Igrv Loc | Hearing Loc | Chair Code | Mail Code | Comments Field |
|---|---|---|---|---|---|---|
| ✓BUSINESS/TRUS' | | MEN | MEN | LEMC | G | GRVS ON 9/19/13 WANTS PLACED ON INDIGENT LIST FOR PERSONAL HYGIENE PR( |
| ✓CLASSIFICATION | | MEN | MEN | LEMC | G | GRV. # 114-10-13; GRIEVES BLUE ID - ESCAPE RISK |
| ✓CONDITIONS | | MEN | MEN | LEMC | G | GRV. # 96-10-13; GRIEVES BROKEN TOLIET AND STAFF WAS ADVISED |
| ✓CONDITIONS | | LAW | LAW | LEMC | G | GRV. # 05-13-300; GRIEVES NOT ADEQUATETOILET ACCESS IN DAYROOM AND YAR |
| ✓DIETARY | | MEN | MEN | LEMC | G | GRV. # 95-11-13; GRIEVES SERVED CEREAL WITH WINGED BUGS IN IT; REQUEST A |
| ✓DR | | WIL | WIL | JAMI | G | GRIEVES DR (11/24/12) |
| DR | | LAW | MEN | LEMC | G | GRV. # 05-13-248; GRIEVES DR (3/21/13) INC. # 201300587. ARB REVIEWED TICKET 8 |
| ✓GRIEV PROCESS | | LAW | LAW | LEMC | G | GRV. # 06-13-18; GRIEVES NOT RECEIVING GRIEVANCES BACK IN REQUIRED TIMEF |
| ✓LIBRARY | | MEN | MEN | LEMC | G | GRV. # 41-12-13; GRIEVES LAW LIB POLICY AND ACCESS; REQUEST COPIES OF AL |
| ✓MAILROOM | | MEN | MEN | LEMC | G | GRV. # 14-11-13; GRIEVES RETALIATION IN RECEVING AN EMPTY ENVELOPE FROM |
| ✓MEDICAL | | LAW | LAW | LEMC | G | GRV. # 06-13-19; ALLEGES NURSE BROOKS INTERFERED WITH AN ORDER FOR AN |
| ✓MEDICAL | | MEN | MEN | LEMC | G | GRV. #98-10-13 9/27/13 MED SICK CALL TO DR SHEARING FOR RIGHT KNEE, SHOULI |
| MEDICAL - missing | | LAW | LAW | JAMI | G | ALLEGES SHOULDER PAIN AND DENIED MED. CARE /VERBAL ASSUALT; REQUEST I |
| ✓MEDICAL | | LAW | LAW | LEMC | G | GRV. # 05-13-247; GRIEVES PAIN SHOT IS NOT WORKING; REQUEST TO SEE DR AN |
| ✓MEDICAL | | LAW | LAW | LEMC | G | GRV. # 06-13-20; GRIEVES DID NOT RECEIVE THE REQUESTED COPIES OF MED. RE |
| ✓MEDICAL | | LAW | LAW | LEMC | G | GRV. # 05-13-299; GRIEVES NOT INFORMED OF THE RESULTS OF OUTSIDE ULTRAS |
| ✓MEDICAL | | MEN | MEN | LEMC | G | GRV. # 16-11-13; GRIEVES PAIN IN RIGHT KNEE AND SHOULDER WAS TO BE SCH OI |
| ✓OTHER | | MEN | MEN | LEMC | G | GRV. # 2-10-13; GRIEVES NOT ABLE TO GET HAIRCUT AND SHAVE ONCE A WEEK. F |
| ✓OTHER | | MEN | MEN | LEMC | G | GRV. # 97-10-13; GRIEVES NOT RECEIVED A SECOND SET OF BLUES AND A PILLOW |
| ✓PP | | WIL | WIL | JAMI | G | STATES PP ITEMS CONFISCATED DURING 8/4/12 SHAKEDOWN. |
| ✓PP | | MEN | MEN | LEMC | G | GRV. # 100-10-13; GRIEVES A REQUESTED LEGAL CHANGE OF BOXES WITH NO RE |
| PP - missing | | WIL | LAW | LEMC | G | GRV. # 05-13-250; GRIEVES PP (FAN - LEGAL BOXES) MISSING; REQUEST PP RETU |
| ✓PRIVILEGES | | LAW | LAW | LEMC | G | GRV. # 05-13-301; GRIEVES LAW DENIES THE AMENITIES AND PRIVILEGES AT OTHE |
| ✓RELIGION | | MEN | MEN | LEMC | G | GRV. # 15-11-13; GRIEVES NOT BEING ABLE TO ATTEND CHURCH SERVICES |
| ✓SECURITY | | WIL | WIL | JAMI | G | STATES IN BODY OF GRIEVANCE HE WAS THREATENED BY INMATE STEWARD CALI |
| SECURITY | | MEN | MEN | LEMC | G | GRV. # 4-12-13; ALLEGES THREATS AGAINST STAFF |
| STAFF CONDUCT | | WIL | WIL | JAMI | G | 12-1005; STATES MANDATORY CALL PASS NOT HONORED BY SECURITY 9/25/12 |
| STAFF CONDUCT | | LAW | MEN | TEAN | G | ALLEGES RETALIATION FOR FILING GRIEVANCES |
| STAFF CONDUCT | | WIL | WIL | JAMI | G | STATES HIS CELLMATE'S FAN WAS CONFISCATED DURING SHAKEDOWN ON 6/21/12 |
| ✓STAFF CONDUCT | 03/24/2014 | MEN | MEN | LEMC | G | RGF: ALLEGES STAFF REFUSING REQUEST SLIPS AND I/M BEING ASSUALTED BY AN |
| ✓CONDITIONS | 03/14/2014 | MEN | MEN | LEMC | G | RGF: ALLEGES VERY COLD CONDITIONS IN CELL; REQUEST HEAT TURNED ON ANI |

| Igrv Code | Hearing/Rec Date | Igrv Loc | Hearing Loc | Chair Code | Mail Code | Comments Field |
|---|---|---|---|---|---|---|
| LIBRARY | 03/14/2014 | MEN | MEN | LEMC | G | RGF: GRV. # 101-10-13; GRIEVES MULTI REQUESTS FOR MOTARY & COPIES & SLOV |
| LIBRARY | 03/14/2014 | MEN | MEN | LEMC | G | RGF: GRV. # 99-10-13; GRIEVES LAW LIB PROCEDURES AND ISSUES ON 10/3/13. O |
| CLASSIFICATION | 03/10/2014 | LAW | MEN | LEMC | G | GRV. # 04-13-61; GRIEVES CLASSIFICATION OF MODERATE ESCAPE (BLUE ID. ) WII |
| MEDICAL | 03/10/2014 | LAW | MEN | LEMC | G | GRIEVES 147-7-13; GRIEVES MED ISSUES, TRANSFER AND CELL PLACEMENT IN TH |
| MEDICAL | 03/03/2014 | LAW | MEN | LEMC | G | ALLEGES ARM/SHOULDER PAIN; REQUEST ARM FIXED, PAIN MED, PERMIT FOR NO |
| MAILROOM | 02/04/2014 | LAW | LAW | LEMC | G | RGF: GRV. # 03-13-20; GRIEVES LEGAL ENVELOPE WAS OPENED AND IT IS A ONGO |
| MEDICAL | 02/04/2014 | LAW | LAW | LEMC | G | RGF: GRV. # 03-13-16; GRIEVES IGNORED WHEN DELARING HUNGER STRIKE. REC |
| MEDICAL | 02/04/2014 | LAW | LAW | LEMC | G | RGF: GRV. # 03-13-17; GRIEVES NOT RECEIVING ADEQUATE MED TX FOR RIGHT KI |
| MEDICAL | 02/04/2014 | LAW | MEN | LEMC | G | RGF: GRIEVES TR TO MENARD & MEDICAL CONTRACT NOT BEING HONORED & ME |
| STAFF CONDUCT | 02/04/2014 | LAW | LAW | LEMC | G | RGF: GRV. # 2-13-125; GRIEVES DENIED HAIRCUT AND SHAVE. RECEIVED 30 DAYS |
| TR | 01/14/2014 | WIL | LAW | LEMC | G | GRIEVES THE DISCIPLINARY TR; REQUEST EMERGENCY TR FOR MEDICAL/MENTAI |
| MEDICAL | 01/03/2014 | WIL | LAW | LEMC | G | RGF: GRV. # 12-1164; GRIEVES MED TX ON 10/4/12. I/M RECEIVED KNEE SLEEVE OI |
| ESCAPE STATUS | 12/20/2013 | MEN | MEN | LEMC | G | RGF: GRV DATED 11/11/13 - GRVS SAFE AND SECUR MEDICAL PLACEMENT. NEED ( |
| MEDICAL | 12/20/2013 | WIL | LAW | LEMC | G | GRV. # 12-1132; GRIEVES MED TX; REQUEST TO BE SEEN BY DOC. I/M REFUSED T |
| SECURITY | 12/20/2013 | WIL | MEN | LEMC | G | 12-1072, THREATENED BY ANOTHER OFFENDER WHILE IN HCU ON 10/4/12. I/M MO\ |
| MEDICAL | 12/13/2013 | IRI | LAW | LEMC | G | ALLEGES ON TR FOR COURT WRIT KNEE SLEEVE TAKEN FOR SECURITY REASON,I |
| GRIEV PROCESS | 12/12/2013 | MEN | MEN | LEMC | G | RGF: ALLEGES I/M GRIEVANCES BEING HELD HOSTAGE AT LAW CC AND WOULD LI |
| MEDICAL | 11/12/2013 | WIL | MEN | LEMC | G | GRV# 12-1004; GRIEVES NOT GETTING ICE 3X A DAY ORDERED BY DR 7/15/12; STA |
| MEDICAL | 11/05/2013 | WIL | WIL | LEMC | G | GRV# 12-1002; GRIEVES STAFF FAILS TO DELIVER MEDICAL PRESCRIPTIONS, ICE / |
| MEDICAL | 11/05/2013 | WIL | MEN | GIAL | G | GRV# 12-0991 & #12-1005 COMBINED; GRIEVES REC'D EYEGLASSES 8/31/12 AND PI |
| CONDITIONS | 11/04/2013 | WIL | MEN | LEMC | G | GRV# 12-0995; GRIEVES BATHROOM IN HCU IS UNSANITARY AND NOT SAFE. ADDI |
| STAFF CONDUCT | 11/04/2013 | WIL | MEN | LEMC | G | GRV# 12-0992; STAFF CONDUCT & MISSING CHOW. I/M HAD SHORTS ON UNDER ST |
| STAFF CONDUCT | 11/02/2013 | WIL | MEN | LEMC | G | GRV# 12-0993; C/O MOUNTAIN DID NOT SIGN HIM UP FOR SICK CALL 6/18/12. MOUI |
| STAFF CONDUCT | 11/02/2013 | WIL | MEN | LEMC | G | 12-0994; C/O MATTESON CALLED LATE CHOW @ 12:20 AND OFFICERS WAITED 30 M |
| STAFF CONDUCT | 11/02/2013 | WIL | MEN | LEMC | G | 12-1001; DENIAL OF UPSTAIRS BATHROOM USE BY OFFICERS KOCH & CARLOCK. I |
| LIBRARY | 10/28/2013 | MEN | MEN | BIGR | G | RGF. GRV # 04/13/18 , GRV ALLEGES 3/15/13 LIB. MUSGRAVES HANDED C/O WALL A |
| STAFF CONDUCT | 10/28/2013 | LAW | LAW | BIGR | G | RGF. GRV. #04-13-17, GRV ALLEGES 1/23/13 WHILE TR TO COURT HIS MEDICAL ISSU |
| STAFF CONDUCT | 10/28/2013 | LAW | LAW | BIGR | G | RGF. GV. # 04-13-16; GRIEVES ALLEGING MEDICAL CONCERNS ARE DOWN PLAYED |
| STAFF CONDUCT | 10/28/2013 | LAW | LAW | BIGR | G | RGF: GRV. # 04-13-18; GRIEVES LIB STAFF MUSGRAVE WILL NOT COMPLETE REQU |
| MEDICAL | 10/25/2013 | MEN | MEN | LEMC | G | RGF: 2 GRVS BOTH DATED 10/15/13 COMPLAINING OF RIGHT SHOULDER & RIGHT I |
| MEDICAL | 10/25/2013 | MEN | MEN | LEMC | G | RGF: 7/17/13 FELL & RIGHT KNEE NEEDS MEDICAL ATTENTION. NEED G.O./CAO'S R |

STATE OF ILLINOIS )
) ss
COUNTY OF Cook )

## DECLARATION

I, GLADYSE C. TAYLOR, do hereby declare and state, under penalty of perjury, that I have personal knowledge of the facts and matters discussed in this declaration, and, if called as a witness, that I am competent to testify and would state as follows:

1. I was the Acting Director of the Illinois Department of Corrections ("IDOC") from September of 2010 until May of 2011.

2. In May of 2011, I resumed my duties as the Assistant Director of IDOC.

3. As part of my duties as the Acting Director, I was charged with reviewing inmate grievances that had been appealed by an inmate after receiving a response from the Grievance Officer and Chief Administrative Officer of the institution where the inmate was housed.

4. Under relevant law, I was able to delegate the responsibility of reviewing grievance appeals to a designee.

5. I delegated my responsibility of reviewing grievance appeals to the Administrative Review Board ("ARB").

6. Specifically, I designated Terri Anderson, Chairperson of the ARB, to review ARB decisions regarding inmate grievances on my behalf.

7. I did not read inmate grievances nor the decisions of the ARB; my designee, Terri Anderson, did that instead.

8. I did not sign decisions of the ARB; my designee, Terri Anderson, did that instead.

EXHIBIT
L

9. I am not now, nor have I ever been, personally aware of grievances filed by inmate Stephen Couch, B12125.

10. I have never deliberately chosen not to respond to a grievance appeal by inmate Stephen Couch.

11. I have never conspired with another person not to respond to, or to deny for any improper reason, a grievance appeal by inmate Stephen Couch.

12. I have never retaliated against inmate Stephen Couch.

13. I have never conspired with another person to retaliate against inmate Stephen Couch.

14. I have read the foregoing paragraphs and they are true and accurate to the best of my knowledge and belief.

FURTHER DECLARANT SAYETH NOT.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

_s/Gladyse Taylor
Gladyse Taylor
Executed on May 30, 2014.

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

**DECLARATION**

I, S.A. GODINEZ, do hereby declare and state, under penalty of perjury, that I have personal knowledge of the facts and matters discussed in this declaration, and, if called as a witness, that I am competent to testify and would state as follows:

1. I am employed as the Director of the Illinois Department of Corrections ("IDOC").

2. I have been employed in that capacity since May of 2011.

3. As part of my duties as Director, I am charged with reviewing offender grievances that have been appealed by the offender after receiving a response from the Grievance Officer and Chief Administrative Officer of the institution where the offender is housed.

4. Under relevant law, I may delegate my responsibility of reviewing offender grievance appeals to a designee.

5. I have delegated my responsibility of reviewing those grievance appeals to the Administrative Review Board ("ARB").

6. Specifically, I have designated Terri Anderson, Chairperson of the ARB, to review ARB decisions on offender grievances on my behalf.

7. I do not read offender grievances or the decisions of the ARB with respect to those grievances; my designee, Terri Anderson does that instead.

8. I do not sign decisions of the ARB; my designee, Terri Anderson does that instead.

9. I am not now, nor have I ever been, personally aware of grievances filed by IDOC offender Stephen Couch, B12125.

10. I have never deliberately chosen not to respond to a grievance appeal by Stephen Couch.

11. I have never conspired with another person not to respond to, or to deny for an improper reason, a grievance appeal by Stephen Couch.

12. I have never retaliated against Stephen Couch.

13. I have never conspired with another person to retaliate against Stephen Couch.

14. I have read the foregoing paragraphs and they are true and accurate to the best of my knowledge and belief.

FURTHER, DECLARANT SAYETH NOT.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

s/S. A. Godinez
S.A. Godinez
Executed on 5/30/, 2014.

## CONTRACT

The Parties to this contract are the State of Illinois acting through the undersigned Agencies, Illinois Department of Healthcare and Family Services and Illinois Department of Corrections (collectively the State) and the Vendor (Wexford Health Sources, Inc.). This contract, consisting of the signature page and numbered sections listed below and any attachments referenced in this contract constitutes the entire contract between the Parties concerning the subject matter of the contract and supersedes all prior proposals, contracts and understandings between the Parties concerning the subject matter of the contract. This contract can be signed in multiple counterparts and signature may be electronic or digital upon agreement of the Parties.

9911002

1. TERM AND TERMINATION
2. DESCRIPTION OF SUPPLIES AND SERVICES
3. PRICING
4. STANDARD BUSINESS TERMS AND CONDITIONS
5. STANDARD CERTIFICATIONS
6. DISCLOSURES AND CONFLICTS OF INTEREST
7. SUPPLEMENTAL PROVISIONS

In consideration of the mutual covenants and agreements contained in this contract, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the terms and conditions set forth herein and have caused this contract to be executed by their duly authorized representatives on the dates shown below.

**VENDOR**
Wexford Health Sources, Inc.
Signature [signature]
Printed Name DAniel Conn
Title EVP & COO Date 05/06/2011
Address 425 Holiday Dr. Foster Plaza Two
Pittsburgh, PA 15220
Phone 412-937-8590 Fax 412-937-8599
E-mail dconn@wexfordhealth.com

**STATE OF ILLINOIS**
IL Department of Corrections
Official Signature [signature]
Printed Name S.A. Godinez
Title Director Date 5/9/11
Designee Signature
Printed Name
Title
Address

Phone 217/558-2200 Fax 217/522-7072
E-mail

**STATE OF ILLINOIS**
IL Department of Healthcare & Family Services
Official Signature [signature]
Printed Name Julie Hamos
Title Director Date 5/6/11
Designee Signature
Printed Name
Title
Address 201 S. Grand Ave. E.
Springfield, IL 62763
Phone 217-782-1200 Fax 217-524-7979
E-mail

HFS# 2010-05-008

Exhibit FO 2,1

1. **TERM AND TERMINATION**

1.1 **TERM OF THIS CONTRACT:** This contract has an initial term of four (4) years and eleven and one-half (11½) months. The term of the contract shall commence on May 16, 2011. The initial term will expire April 30, 2016.

In no event will the total term of the contract, including the initial term, any renewal terms and any extensions, exceed 9 years and eleven and one-half (11½) months. The State may elect to extend the contract term by renewal beyond the initial term.

Vendor shall not commence work in furtherance of the contract prior to execution of the contract.

1.2 **RENEWAL:** Subject to the maximum total term as identified above, the State has the option, after the initial term, to renew for five (5) additional years in one of the following manners:

a) One renewal covering the entire 5-year renewal allowance,
b) Individual one-year renewals up to and including the entire renewal allowance, or
c) Any combination of one-year and/or multi-year renewals that do not exceed the total renewal allowance of five (5) years.

Pricing for the renewal term(s), or the formula for determining price is shown in the pricing section of this contract.

Any renewal is subject to the same terms and conditions as the original contract and any amendment(s) thereof. The State may renew this contract for any of the option periods specified above based on continuing need and favorable market conditions, when in the interest of the State. The contract may not renew automatically nor may the contract renew solely at the Vendor's option.

1.3 **TERMINATION FOR CAUSE:** The State may terminate this contract, in whole or in part, immediately upon notice to the Vendor if: (a) the State determines that the actions or inactions of the Vendor, its agents, employees or subcontractors have caused, or reasonably could cause, jeopardy to health, safety, or property, or (b) the Vendor has notified the State that it is unable or unwilling to perform the contract.

If Vendor fails to perform to the State's satisfaction any material requirement of this contract, is in violation of a material provision of this contract, or the State determines that the Vendor lacks the financial resources to perform the contract, the State shall provide written notice to the Vendor to cure the problem identified within the period of time specified in the State's written notice. If not cured by that date the State may either: (a) immediately terminate the contract without additional written notice or (b) enforce the terms and conditions of the contract.

For termination due to any of the causes contained in this section, the State retains its rights to seek any available legal or equitable remedies and damages.

1.4 **TERMINATION FOR CONVENIENCE:** The State may, for its convenience and with 30 days prior written notice to Vendor, terminate this contract in whole or in part and without payment of any penalty or incurring any further obligation to the Vendor. The Vendor shall be entitled to compensation upon submission of invoices and proof of claim for supplies and services provided in compliance with this contract up to and including the date of termination.

1.5 **TERMINATION BY VENDOR:** The Vendor may terminate this Contract with a 120 days non-revocable written notice to the Agency. Vendor must comply with the termination duties defined in Section 1.6.

1.6 **VENDOR'S TERMINATION DUTIES:** Vendor, upon receipt of notice of termination or upon request of the Agency, shall:

a. Cease work under this Contract and take all necessary or appropriate steps to limit disbursements and minimize costs, and furnish a report within thirty (30) days of the date of notice of termination, describing the status of all work under the Contract, including, without limitation, results accomplished, conclusions resulting there from, any other matters the Agency may require;

b. Immediately cease using and return to the Agency any personal property or materials, whether tangible or intangible, provided by the Agency to Vendor;

c. Comply with the Agency's instructions for the timely transfer of any active files and work product produced by Vendor under this Contract;

d. Cooperate in good faith with the Agency, its employees, agents and Vendors during the transition period between the notification of termination and the substitution of any replacement Vendor; and

e. Immediately return to the Agency any payments made by the Agency for services that were not rendered by Vendor.

## 2. DESCRIPTION OF SUPPLIES AND SERVICES

Vendor is to provide the medical, dental, vision, pharmaceutical and mental health services for offenders at specified State correctional centers. Under the direction of the IDOC Medical Director and the IDOC Chief of Mental Health Services and according to the program definitions and specifications as outlined in this contract, Vendor is to arrange and provide for services on-site and as necessary off-site at local hospitals, outpatient facilities and consultative physician offices. Agency recognizes that methods of delivery of these services may differ from methods used to provide services to members of the general public, but the care and services Vendor provides should be similar. It is the intent of Agency for all offenders to receive adequate and cost effective health care services regardless of place of assignment or disciplinary status.

Vendor will provide these services at the following correctional centers beginning with the effective date of this contract: Big Muddy, Danville, Decatur, Dixon, Dwight, East Moline, Graham, Hill, Illinois River, Jacksonville, Lawrence, Lincoln, Logan, Menard, Pinckneyville, Pontiac, Robinson, Shawnee, Sheridan, Stateville (including the Reception & Classification Center), Tamms (including the Minimum Security Unit), Vienna, and Western Illinois.

Vendor will provide these services at the following correctional centers beginning with the effective date of September 1, 2011: Centralia, Southwestern Illinois, Taylorville, and Vandalia.

2.1 GOAL: To maintain health status of offenders, establish innovative and cost effective medical and administrative programs, improve the quality of care, provide acceptable, cost effective levels of staffing, and positively impact purchasing of pharmaceutical and/or medical supplies.

### 2.2 SUPPLIES AND/OR SERVICES REQUIRED

**2.2.1 State of Illinois Functions and Duties:** The State shall perform the following functions and duties, including but not limited to:

**2.2.1.1** Provide an IDOC Medical Director to:
- **a.** oversee the medical services for correctional centers;
- **b.** provide medical direction to Vendor and IDOC medical staff;
- **c.** coordinate offender behavioral/mental health services with the IDOC Chief of Mental Health Services, where applicable; and
- **d.** oversee the Contract.

**2.2.1.2** Provide an IDOC Chief of Mental Health Services to:
- **a.** oversee the behavioral/mental health services;
- **b.** provide behavioral/mental health direction to Vendor and IDOC mental health staff; and,
- **c.** coordinate offender behavioral/mental health services with the IDOC Medical Director, where applicable; and
- **d.** oversee the Contract.

**2.2.1.3** Provide Health Care Unit Administrators to supervise and oversee the operation and activities of the Health Care Unit at each Correctional Center.

**2.2.1.4** Provide medical support staff as detailed in Staffing Schedules, Exhibit II.

**2.2.1.5** Process and pay claims for all:
- **a.** inpatient hospital services;
- **b.** outpatient hospital services;
- **c.** hospital emergency room care services; and
- **d.** non-institutional provider services (NIPS).

**2.2.1.6** Compile reports of Eligible Hospital Claims applicable to the Annual Hospital Utilization Threshold, identify payments which occurred after the Annual Hospital Utilization Threshold was reached for the purposes of calculating a performance adjustment for overutilization of Hospital Services, share the reports with Vendor, and reconcile differences between the State's records and Vendor's records.

**2.2.1.7** Coordinate telemedicine services for offenders with HIV/AIDS and Hepatitis C as provided through University of Illinois d/b/a University of Illinois Medical Center (UIC).

**2.2.1.8** Provide IDOC security to offenders treated off-site due to medical necessity and not for Vendor convenience or lack of Vendor staffing.

**2.2.1.9** Provide and pay the cost of state-owned transportation and/or handicapped accessible vehicles, when available, for off-site medical services.

**2.2.1.10** Pay the costs of ground or air ambulance services to transport an offender from the first hospital to the second hospital when the offender has been admitted for inpatient care and must be moved to another hospital due to medical necessity or if the move has been requested by IDOC. Such transportation must occur directly from the original inpatient admission with no break in service. Payment will be made at the prevailing State rate set by HFS for Medical Assistance recipients at the time of service.

**2.2.1.11** Provide internal policies, procedures and rules and any updates that govern all operations of the IDOC Correctional Centers.

2.2.1.12 Maintain IDOC management informational systems (MIS) of offenders and provide Vendor access to MIS for required operational functions.

2.2.1.13 Establish and monitor contractual performance targets.

2.2.1.14 Conduct audits to confirm the validity of the performance target results reported and enforce penalties as appropriate.

2.2.1.15 Reconcile, adjust and pay money due to Vendor.

2.2.2 **Vendor Functions and Duties:** Vendor will be responsible for providing safe and cost effective on-site medical and mental health services. Off-site services will be reserved for specialty and emergency care that cannot be provided on site. The Vendor shall perform the following functions and duties, including, but not limited to:

2.2.2.1 Provide comprehensive medical and mental health services to offenders in a professional manner. These services may include but are not limited to:

- a. The spectrum of medical subspecialties.
- b. Consultative services in all fields of medicine.
- c. Comprehensive dental services including oral surgery and dental prosthetics.
- d. Optometry services including the issuance and distribution of corrective lenses.
- e. Comprehensive and specialized mental health services.
- f. Pharmaceutical services.
- g. Laboratory services.
- h. X-ray services – both on-site plain films and off-site specialized imaging.
- i. Physical/Occupational/Speech Therapy.
- j. Interpreter services to offenders who require communication assistance during delivery of medical and mental health services.
  These services may include the use of qualified sign language interpreters and other auxiliary aids and services that meet the effective communication needs of each individual offender.
- k. On-site Specialty Clinics in compliance with the Staffing outlined in Exhibits I and II.

2.2.2.2 Operate the medical and mental health program in a cost effective manner with full reporting and accountability to Agency.

2.2.2.3 Operate the medical and mental health program at appropriate staffing levels using professionally trained personnel who are licensed and/or certified in compliance with Illinois statutes and/or regulations.

2.2.2.4 Train Vendor's staff of internal policies, procedures and rules that governs the operation of the Correctional Centers.

2.2.2.5 Compensate Vendor union employee salaries at an amount no less than the last agreed upon or current ratified collective bargaining agreement.

2.2.2.6 Maintain an open, collaborative relationship with Agency.

2.2.2.7 Provide comprehensive medical and mental health examination on every offender and in compliance with all applicable Administrative Directives.

2.2.2.8 Arrange with medical and mental health provider(s) to provide said services including, but not limited to, consultation with medical specialists at the correctional facility whenever possible, inclusive of telehealth, if approved by IDOC Medical Director.

2.2.2.9 Provide medical/mental health record services to each facility.

2.2.2.10 Provide biohazard handling.

2.2.2.11 Provide medical, surgical and supplies and equipment associated with Health Care Unit.

2.2.2.12 Provide office supplies and equipment necessary for the execution of this contract.

2.2.2.13 Provide pharmacy services, both prescription and over the counter, which include the following:

- a. Ordering, Stocking, Supplying and Managing Medications;
- b. Packaging, Labeling and Dispensing Offender Medications;
- c. Maintaining Medication Delivery Systems;
- d. Supplies associated with Medication; and
- e. Clinical Pharmaceutical Support Services.

2.2.2.14 Maintain good working relationship with community medical and mental health providers in order to provide off-site services.

2.2.2.15 Aggressively manage all off-site services for appropriate utilization and cost effectiveness.

2.2.2.16 Provide appropriate alternative transportation to all off-site services for offenders from Correctional Centers when State-owned handicapped accessible vehicles are unavailable.

A.U.2

2.2.2.17 Provide network, administration and management of off-site services.

2.2.2.18 Process claims and pays for Non-Hospital Services and Tertiary Care in a timely manner.

2.2.2.19 Participate in physician peer review program and any audit/peer review conducted by an outside review source to ensure compliance with accepted professional standards of performance – which includes, but not limited to, chart reviews of the following:

a. On-site Medical Director;
b. Staff Physicians;
c. Nurse Practitioners;
d. Physician Assistants;
e. Psychiatrists.

2.2.2.20 Provide statewide Utilization Management/Review for medical and mental health services.

2.2.2.21 The On-site Medical Director shall be responsible for monitoring the performance of medical personnel rendering direct patient care. When significant deficiencies are discovered, he/she will report them to the facility CAO, HCUA, Vendor Medical Director and IDOC Medical Director.

2.2.2.22 The Vendor's Mental Health Director or designated psychiatrist shall monitor the performance of all mental health personnel rendering direct patient care and report the results of this performance monitoring to the IDOC Chief of Mental Health Services.

2.2.2.23 Participate in reconciliation of claims processed and paid by Agency for all hospital services claims.

2.2.2.24 Maintain complete and accurate records of care as required by Agency and collect and analyze health statistics on a regular basis, as stipulated in the Contract.

2.2.2.25 Maintain records in the standard format covering, and in accordance with State requirements for record retention, offender comprehensive medical and mental health services while incarcerated, payments disbursed by the Vendor, as well as any pertinent books, documents, papers, and reports related in any way to this procurement.

2.2.2.26 Use separate accounting and reporting systems for each Center in accordance with sound accounting practices. Vendor shall furnish the Agency with timely reports in mutually agreed upon formats for each Center in accordance with IDOC accounting practices.

2.2.2.27 Maintain timely, comprehensive auditing and internal quality control procedures as stipulated in the Contract.

2.2.2.28 Provide services in accordance with medically accepted ACA standards of care.

2.2.2.29 Provide, as requested, the IDOC Chief of Mental Health Services with a monthly report listing the number of AIMS tests conducted and which offenders were tested.

2.2.3 **Comprehensive Medical Program:** Vendor shall provide safe, adequate and cost-effective medical care and treatment services at the correctional centers including, but not limited to:

| | | |
|---|---|---|
| dental | ophthalmology | offender health education and wellness programs |
| vision | audiology | HIV/AIDS, except as specified in 2.2.3.8 |
| pharmaceutical | long term care services | Hepatitis C, except as specified in 2.2.3.8 |
| radiological | planning of restricted medical diets | Hypertension |
| laboratory | chronic and acute care for dialysis except as specified in 2.2.3.17 | endocrine disorders |
| optometry | medical orthotics/prosthetics | physical/occupational/speech therapy |

Vendor shall make arrangements with medical and mental health provider(s) to provide said services including, but not limited to, consultation with medical specialists at the correctional center whenever possible which may differ from methods used to provide services to members of the general public, and supplementary non-hospital and hospital services off-site at local hospitals, outpatient facilities and consultative physician offices, only when such services cannot be safely, adequately and cost-effectively delivered on-site at the correctional centers.

2.2.3.1 **Screening and Health Assessments**

2.2.3.1.1 **New Offenders:** Vendor shall provide a comprehensive health examination, consisting of an intake screening and a physical examination, for each offender newly admitted to the IDOC system. A full oral examination and eye