IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN COUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-1100-SMY-PMF |
| ) | |
| SALVADOR A. GODINEZ, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Before the Court is a Motion for Summary Judgment filed by Defendant John Coe, M.D. (Doc. 105). The motion is opposed (Docs. 117, 133). Replies are on file (Docs. 122, 138).

Plaintiff Stephen Couch is confined at Hill Correctional Center. He is challenging the conditions of his former confinement at Lawrence Correctional Center and his transfer from Lawrence to Menard Correctional Center. As to Defendant Coe, Couch is proceeding on three Eighth Amendment claims alleging that Coe responded to his serious medical needs with deliberate indifference (Counts 1, 2, and 3) and a First Amendment claim alleging that he experienced retaliation for his protected speech (Count 4).

Summary judgment will be entered if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Couch's Eighth Amendment claims have objective and subjective elements of proof. Couch can satisfy the objective element if a physician diagnosed his medical

condition as requiring treatment or the need for treatment would be obvious to a layperson. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). As to the subjective element, Couch can show that Defendant Coe acted with deliberate indifference if he consciously disregarded a known and substantial risk of harm. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference is more culpable than negligence. It is conduct that is intentional or reckless. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

## Count 1

In Count 1, Couch claims that Dr. Coe responded with deliberate indifference to his serious need for continuity in treatment of a painful shoulder ailment by (1) failing to implement a medical hold and (2) failing to devise a complete treatment plan. Couch maintains that these omissions effectively discontinued treatment through physical therapy and further testing.

Coe's argument focuses on the second element of Couch's Eighth Amendment claim. He contends that evidence pertaining to a medical hold and treatment plan would not support a finding of deliberate indifference, but would only support a finding that he addressed Couch's need for treatment of a shoulder ailment in accordance with his medical and treatment status. He further contends that his failure to implement a medical hold was not sufficiently culpable because Couch's particular medical situation did not require surgery by a local specialist or other care necessitating a medical hold. As to a treatment plan, Coe relies on evidence that an Offender Health Status Transfer Summary was prepared in connection with Couch's transfer.

Couch responds that Coe's failure to implement a medical hold is sufficiently culpable because Coe deviated from the terms of a contract between his employer and the Illinois Department of Corrections. Additionally, he asserts that the transfer summary did not fully and accurately reflect the treatment plan Coe was implementing.

The Court assumes that Couch can satisfy the objective element of proof by showing that, in May and June, 2013, he had a serious medical need for treatment of persistent pain and stiffness in his right shoulder. This condition was initially diagnosed by Dr. Coe as a rotator cuff injury and subsequently diagnosed by Dr. Wood, an orthopedic specialist, as "frozen shoulder post status right shoulder dislocation" (Doc. 133-4; Doc. 133-14).

While Couch was confined at the Lawrence facility, Dr. Coe evaluated Couch's condition on several occasions, beginning on May 13, 2013. He offered to admit Couch to the infirmary, assessed his progress with a physical therapy assistant, prescribed a pain reliever and a non-steroidal anti-inflammatory drug and agreed with the physical therapy assistant's recommendation for continued therapy for a period of 4 weeks (Doc. 133-1; Doc. 133-9; Doc. 133-11; Doc. 133-11). During this period, Couch also received a medical furlough for his initial consultation with a physical therapist and testing via ultrasound (Doc. 133-1; Doc. 106-4, p; Doc. 117-5).

On June 4, 2013, Couch met with Coe for the last time. Coe concluded that Couch was not making significant progress with physical therapy. Coe's plan was to seek approval for a repeat ultrasound (Doc. 133-11). Coe initiated a request for the repeat ultrasound using a collegial review process. To his knowledge, the collegial review did not occur (Doc. 133-4; 133-10).

At this point, Couch believed that he was getting the best treatment Coe could provide under the circumstances (Doc. 133-1).  At one point, Couch encouraged Coe to implement a "medical hold" so that he could continue to receive the treatment Coe was providing, arranging or recommending (Doc. 133-1).

Shortly after his June 4, 2013, visit with Coe, Couch was selected for a transfer to the Menard facility, along with a number of other inmates.  Coe did not participate in the process of selecting inmates for transfer and was never consulted regarding the medical propriety of a transfer.  At the same time, he did not make an effort to stop the transfer by placing a medical hold on Couch.

Coe's employer had a contract to provide medical services to inmates in the custody of the Illinois Department of Corrections.  A portion of that contract provided:

> Offenders undergoing treatment, care or procedures including, but not limited to, surgery, prosthetics, and dental prosthetics and are scheduled to be transferred to another Center shall be placed on a "Medical Hold," if the transfer will interfere with the treatment, care, and procedures of the offender, with the exception of administrative disciplinary or mental health transfers.

(Doc. 117-3).

In connection with Couch's transfer, a nurse prepared a form entitled, "Offender Health Status Transfer Summary."  The form described Couch's current treatment as physical therapy/shoulder for a torn rotator cuff (Doc. 106-2).  Dr. Coe's plan for a repeat ultrasound was not reflected in the form.  At the time, Coe did not review the transfer summary or anticipate that another physician would rely exclusively on the transfer summary content, as this form is typically used by the nursing staff (Doc. 133-10).

Couch maintains that Coe acted with deliberate indifference because he had a professional obligation to initiate a medical hold according to the terms of the contract between the IDOC and Coe's employer. Coe's understanding of the proper purpose of a medical hold was to delay transfer of an inmate who had been approved to visit a local specialist for treatment (Doc. 106-5; Doc. 133-10). Coe was under the impression that an inmate who was receiving physical therapy did not need to be medically held at Lawrence because the services provided by physical therapists are available at any of the prison facilities, including Menard (Doc. 133-10; Doc. 106-7; Doc. 138-3). Someone other than Coe determines whether medical holds are warranted (Doc. 133-10).

Coe's failure to anticipate a transfer and interpret the clause in his employer's contract as a professional obligation to place a medical hold on Couch in order to ensure continuity of therapy could not reasonably support a finding of deliberate indifference. This evidence does not indicate that Coe made a treatment decision that fell far afield of accepted professional medical judgment, reflecting conscious disregard a known and substantial risk of harm. *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2009); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The overall level of attention, treatment, and follow-up care provide by Coe could at worst reflect negligence rather than deliberate indifference. *See Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) (totality of care considered).

Coe's failure to review the transfer summary to ensure that his entire treatment plan for Couch was fully reflected in that document also falls short of the level of culpability needed to meet the deliberate indifference standard. Coe did not prepare the document and had no constitutional duty to ensure that a coworker was performing his/her duties

5

correctly. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (supervisors can only be liable for their own personal actions, not the actions of others). Accordingly, Coe is entitled to judgment in his favor on Count 1.

## Count 2

In Count 2, Couch claims that Coe responded to his serious need for treatment of his shoulder ailment with deliberate indifference when he revoked a front cuff permit on June 11, 2013. Coe asserts that Couch is unable to present verifying medical evidence that the temporary revocation of his front cuff permit resulted in substantial harm. Couch responds that the medical permit system and interruption of care caused severe injuries and that the decision to revoke the permit without taking some other action to prevent injury qualifies as deliberate indifference (Doc. 117; Doc. 133).

Coe ordered front cuffs for Couch beginning on June 4, 2013, and extending to November 1, 2013. At that time, Coe thought front cuffs would reduce the possibility of Couch getting reinjured (Doc. 133-10). This decision may have been influenced by Couch's report that he had been reinjured in the past when officers forced his hands behind his back (Doc. 106-6). Coe cancelled that permit on June 11, 2013 (Doc. 133-11). The decision to cancel the front cuff permit was influenced by a health care administrator or member of the security staff who made remarks leading Coe to believe that the order for front cuffs presented a legitimate security concern (Doc. 133-10). Remarks written on the cancellation order indicate that Coe planned to investigate another option, such as thigh cuffs (Doc. 133-1).

Following his last visit with Coe, Couch had sessions with the physical therapy assistant (Doc. 106-2). He was transferred to Menard on June 14, 2013 (Doc. 133-1).

When he arrived, he initially learned that he would not be receiving permits or physical therapy at that facility (Doc. 133-1). Yet, on June 24, 2013, he received a medical order for a front cuff permit (Doc. 106-2). At Menard, Couch performed stretching exercises daily (Doc. 133-1).

In cases where prison officials delay rather than deny medical assistance, prisoners are required to offer medical evidence that tends to confirm that the delay was detrimental; that it exacerbated the medical condition or otherwise harmed the inmate. *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007). Couch argues that a material issue of fact is presented by evidence that his transfer interrupted treatment (Doc. 133). Upon review of the cited material, the Court finds no evidence that the particular conduct that may reasonably be attributed to Coe (temporary interruption of a front cuff permit designed to reduce the risk of reinjury) caused harm. At his deposition, Couch testified that he suffered no injury from this decision during the three days he remained housed at Lawrence (Doc.106-6). In the absence of verifying medical evidence of harm, the temporary interruption of a medical permit intended to reduce the risk of reinjury does not amount to deliberate indifference. Accordingly, Coe is entitled to judgment in his favor on Count 2.

## Count 3

In Count 3, Couch claims that Coe responded with deliberate indifference to his serious need for treatment of a shoulder ailment in that he transferred Couch to Menard Correctional Center for the purpose of dumping a patient in order to avoid providing necessary treatment. Coe counters that the facts could not reasonably permit a finding

that he had anything to do with Couch's transfer. Couch asserts that Coe maintained complete control over his medical care and should have intervened to prevent the transfer (Doc. 117).

The record reflects that this transfer was a consequence of correspondence sent by the transfer coordinator to prison officials at the Lawrence and Pinckneyville facilities regarding open beds at Menard (Doc. 117-5). A transfer report permits only one reasonable inference: that Dr. Coe took no part in the decision beyond his failure to recognize that a transfer was about to occur and to intervene to prevent it (Doc. 117-5; Doc. 133; Doc. 133-10). The Court is satisfied that Coe's action did not constitute patient dumping or deliberate indifference. Coe is entitled to judgment in his favor on Count 3.

## Count 4

Coe seeks summary judgment on Plaintiff's First Amendment retaliation claim, arguing that the facts could not support a reasonable conclusion that he engaged in retaliation because he had no involvement in Couch's transfer. To prove a First Amendment retaliation claim, Couch must show that he engaged in activity protected by the First Amendment, that he suffered a deprivation that would likely deter First Amendment activity in the future, and that his speech was a motivating factor in the Defendant's adverse actions. *Kidwell v. Wisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

Couch frequently exercised his First Amendment right to seek redress from prison officials (Doc. 117-2). Additionally, there are no facts to support a finding on the third element of proof: that Coe was motivated to take adverse actions against Couch because

of Couch's protected speech. Accordingly, Coe is entitled to judgment in his favor on Count 4.

## Qualified Immunity

In light of the foregoing conclusions, Defendant's qualified immunity defense is not reached.

## Conclusion

Defendant John Coe's Motion for Summary Judgment (Doc. 105) is **GRANTED**. At the conclusion of this case, judgment shall be entered against Plaintiff Stephen Couch and in favor of Defendant John Doe, M.D. on Counts 1-4. The Clerk of Court is **DIRECTED** to terminate Coe from this case.

**DATED: July 25, 2016.**

 **s/ Staci M. Yandle**
**STACI M. YANDLE**
**UNITED STATES DISTRICT JUDGE**